STATE, Plaintiff-Appellant, v. HART, Defendant-Respondent.

Supreme Court

*No. 76–644–CR. Argued November 29, 1978.—*
*Decided May 1, 1979.*
(Also reported in 277 N.W.2d 843.)

For the appellant there was a brief by *Bronson C. La Follette*, attorney general, *Wm. L. Gansner*, assistant attorney general, *E. Michael McCann*, district attorney of

Milwaukee county, and *Peter J. Kovac,* assistant district attorney of Milwaukee county, and oral argument by *Mr. Kovac.*

For the respondent there was a brief and oral argument by *Barbara E. Maier,* public defender, of Milwaukee.

SHIRLEY S. ABRAHAMSON, J.   The sole issue presented on appeal is the constitutionality of sec. 48.17, Stats. 1975, which divests the juvenile court of jurisdiction of proceedings against children sixteen or older for violations of chs. 341 to 349 of the Motor Vehicle Code or of traffic regulations as defined in sec. 345.20, Stats. The State appeals from an order of the circuit court dismissing the criminal complaint against Hart. We reverse the order dismissing the action.

The criminal complaint charged Hart with "hit and run" alleging that on January 1, 1976 he had been the driver of a vehicle involved in an accident resulting in an injury to a person and that, in violation of sec. 346.67, Stats.,[1] he had failed to remain at the scene of the acci-

---

[1] Sec 346.67, Stats.:

"**346.67 Duty upon striking person or attended or occupied vehicle.** (1) The operator of any vehicle involved in an accident resulting in injury to or death of any person or in damage to a vehicle which is driven or attended by any person shall immediately stop such vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the following requirements:

"(a) He shall give his name, address and the registration number of the vehicle he is driving to the person struck or to the operator or occupant of or person attending any vehicle collided with; and

"(b) He shall, upon request and if available, exhibit his operator's license to the person struck or to the operator or occupant of or person attending any vehicle collided with; and

"(c) He shall render to any person injured in such accident reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to a physician,

dent and to provide information and assistance. The second count charged Hart with driving without an operator's license, alleging that on January 1, 1976 he had operated a motor vehicle on a highway without having a valid operator's license, in violation of sec. 343.05, Stats.[2]

Both of the violations with which Hart was charged are "crimes," as defined by sec. 939.12, Stats., in that they are punishable by fine or imprisonment or both.[3]

Hart's date of birth is March 22, 1958. He was seventeen years of age at both the time of the alleged commission of the offenses and the commencement of the criminal action against him.

---

surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person."

[2] Sec. 343.05(1), Stats.:

"343.05 **Operators to be licensed; exceptions.** (1) Except as provided in sub. (2), no person may operate a motor vehicle upon a highway in this state unless the person has a license issued to him or her by the department, which license is not revoked, suspended, canceled or expired. A valid chauffeur's license satisfies the requirements of this section only when the licensee is operating a vehicle in the performance of his or her duties as chauffeur. No person may operate a motor-driven cycle unless the person possesses a valid operator's license which has been specifically endorsed for motor-driven cycle operation. No person may operate a moped unless the person possesses a valid operator's license."

[3] Sec. 346.74(5), Stats., provides that if sec. 346.67(1), Stats., is violated and there is injury to the person of another, then the penalty may be a fine of "not less than $5 or more than $5,000" or imprisonment for "not less than 10 days nor more than one year."

Sec. 343.05(3), Stats., provides that the penalty for violating sec. 343.05(1), Stats., for the first time, may be a fine of "not more than $100" or imprisonment for "not more than 6 months" or both.

By statutory definition the violation of sec. 346.67 or 343.05(1) constitutes a crime. Sec. 939.12, Stats., provides:

"939.12 **Crime defined.** A crime is conduct which is prohibited by state law and punishable by fine or imprisonment or both. Conduct punishable only by a forfeiture is not a crime."

Sec. 48.12(1), Stats. 1975, provides that, except as further provided in secs. 48.17 and 48.18, Stats. 1975, the juvenile court has jurisdiction over a child, *i.e.* a person under eighteen years of age,[4] "who is alleged to be delinquent because he has violated any federal criminal law, criminal law of any state, or any county, town or municipal ordinance that conforms in substance to the criminal law."

Hart's age notwithstanding, the State initiated this action in the criminal rather than the juvenile court because under sec. 48.17, Stats. 1975, actions against sixteen and seventeen-year-old persons for violations of chs. 341 to 349, *i.e.*, the Motor Vehicle Code, are excluded from the jurisdiction of the juvenile courts. Sec. 48.17, Stats. 1975, provides:

"Courts of criminal and civil jurisdiction shall have exclusive jurisdiction in proceedings against children 16 or older for violations of chs. 341 to 349, or of traffic regulations as defined in s. 345.20."[5]

Before a preliminary examination was conducted, Hart filed a written motion to dismiss the action for lack of jurisdiction on the basis that sec. 48.17, Stats. 1975, on which the criminal court's jurisdiction was predicated,

---

[4] For purposes of ch. 48 a child is defined as "a person under 18 years of age." Sec. 48.02(3), Stats.

[5] Sec. 48.17, Stats. 1975, was renumbered sec. 48.17(1) and amended by Laws of 1977, Ch. 354, sec. 29 to read:

"48.17 **Jurisdiction over traffic and boating, civil law and ordinance violations.** (1) TRAFFIC VIOLATIONS. Except for ss. 342.06(2) and 344.48(1), and s. 346.67 when death or injury occurs, courts of criminal and civil jurisdiction shall have exclusive jurisdiction in proceedings against children 16 or older for violations of ss. 30.50 to 30.80, of chs. 341 to 350, and of traffic regulations as defined in s. 345.20. A child convicted of a traffic or boating offense in a court of criminal or civil jurisdiction shall be treated as an adult for sentencing purposes except that the court may disregard any minimum period of incarceration specified for the offense."

was unconstitutional. Hart argued before the trial court, as he does here, that sec. 48.17, Stats. 1975, denies him the equal protection of the laws by depriving him of the protections of the juvenile justice system, contrasting his situation to that of a seventeen-year-old accused of a criminal offense (*e.g.* homicide).

Hart recognizes that the Children's Code treats children over sixteen years of age differently than those under sixteen. Those over sixteen are not absolutely entitled to the jurisdiction of juvenile court. Secs. 48.12, 48.17 and 48.18, Stats. 1975. Hart does not challenge this age classification. Hart challenges the further legislative classification within this age group. The legislature distinguished between those children over sixteen who are accused of Motor Vehicle Code offenses and those who are accused of other crimes. As to the former group, the legislature itself has made a determination that it is contrary to the best interests of the child or of the public to deal with the child in juvenile court. Sec. 48.17, Stats. 1975. As to the latter group the legislature grants the juvenile court judge discretion to waive jurisdiction if he or she determines after a hearing that it is "contrary to the best interest of such child or of the public" to deal with the child in juvenile court. Sec. 48.18, Stats. 1975.[6] It is this difference between the two groups which Hart challenges.

---

[6] "Sec. 48.18 **Jurisdiction of criminal and civil courts over children 16 or older.** Except as provided in s. 48.17, the criminal and civil courts shall have jurisdiction over a child 16 or older who is alleged to have violated a state law or a county or municipal ordinance only if the juvenile court judge deems it contrary to the best interest of such child or of the public to hear the case and enters an order waiving his jurisdiction and referring the matter to the district attorney, corporation counsel or city attorney, for appropriate proceedings in a criminal or civil court. In that event, the district attorney, corporation counsel or city attorney of the county or municipality shall proceed with the case in the

After considering the briefs of counsel on the issue of the constitutionality of sec. 48.17, Stats. 1975, the trial court granted Hart's motion and ordered the action dismissed, ruling that sec. 48.17 denies to juveniles "the procedural protections of the juvenile court without rational distinction and this denies to such juveniles the equal protection of the law" as guaranteed by the United States[7] and Wisconsin[8] Constitutions.

We hold that sec. 48.17, Stats. 1975, does not offend the equal protection guarantees of either the United States or Wisconsin Constitutions, and we reverse the order dismissing the action.

We begin with the principle often stated by this court and the United States Supreme Court that a statute is presumed to be constitutional and that a heavy burden is placed on the party challenging its constitutionality. *WKBH Television Inc. v. Dept. of Revenue,* 75 Wis.2d 557, 566, 250 N.W.2d 290 (1977) ; *Schilb v. Kuebel,* 404 U.S. 357 (1971). Indeed we have said that when the challenger asserts that a statutory classification is violative of the equal protection clause, he must prove abuse of legislative discretion beyond a reasonable doubt. *State ex rel. La Follette v. Reuter,* 36 Wis.2d 96, 111, 153 N.W. 2d 49 (1967).

Both parties agree that the standard this court should use in reviewing the constitutionality of the statutory classification which has been challenged as violative of

---

same manner as though the jurisdiction of the juvenile court had never attached."

The record does not contain any order of the juvenile court waiving its jurisdiction over Hart in connection with the alleged offenses; nor has the state contended that any such waiver order was ever made.

[7] U.S. Const., Amend. 14.

[8] Sec. 1, Art. I, Wis. Const.

equal protection is the "rational basis" test,[9] *i.e.*, the classification is valid if there is any rational basis to support it.

The rational basis standard for review was stated by the United States Supreme Court in *McGowan v. Maryland,* 366 U.S. 420, 425–426 (1961) as follows:

"[T]he Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

This court described that "rational basis" standard in *Omernik v. State,* 64 Wis.2d 6, 18–19, 218 N.W.2d 734 (1974):

"A legislative classification is presumed to be valid. The burden of proof is upon the challenging party to establish the invalidity of a statutory classification. Any reasonable basis for the classification will validate the statute. Equal protection of the law is denied only where the legislature has made irrational or arbitrary classification. . . . The basic test is not whether some inequality results from the classification, but whether there exists any reasonable basis to justify the classification.

"Judicial response to a challenged legislative classification requires only that the reviewing court locate some reasonable basis for the classification made. The public policy involved is for the legislature, not the courts, to determine. . . ."

---

[9] The parties do not contend that the statutory classification at issue is based on suspect criteria, *Loving v. Virginia,* 388 U.S. 1 (1967), or affects "fundamental rights," *Police Department v. Mosley,* 408 U.S. 92 (1972).

Hart argues that the statutory classification in issue here does not meet the test set forth in *Omernik*. He asserts that the crimes involving motor vehicles proscribed in the Motor Vehicle Code cannot, on the basis of the nature or harmfulness of the criminal conduct, be differentiated from crimes proscribed in statutory provisions outside the Motor Vehicle Code, particularly other crimes involving motor vehicles. Therefore, he argues, the legislative classification is not germane to the purposes of the Motor Vehicle Code or of the Children's Code and has no regard to the public good.

Neither the relevant statutory provisions nor the legislative history give any indication regarding the legislative purpose of the challenged classification or of legislative findings as to why the classification would further that purpose. However, as we have previously said, the court's obligation is to locate or construct, if possible, a rationale that reasonably upholds the legislative determination.

We conclude that there is a rational basis for distinguishing between the treatment of children over sixteen who violate the Motor Vehicle Code and those who violate other provisions of the criminal statutes.

The primary purpose of defining and proscribing conduct in the Motor Vehicle Code is the regulation of drivers and motor vehicles for the promotion of safety on the highways. The legislative purpose in other statutory provisions which define and proscribe conduct may also be the protection of property and life but those provisions are not directly and primarily related to the regulation of drivers and motor vehicles for highway safety.

This court has frequently recognized the seriousness of the problem of highway safety and has upheld statutes designed to promote greater safety of the travelling public either by imposing such "rules of the road" or equip-

ment requirements as seemed necessary or by imposing penalties designed to aid in law enforcement. *See e.g. Bisenius v. Karns,* 42 Wis.2d 42, 165 N.W.2d 377 (1969), and *State v. Duffy,* 54 Wis.2d 61, 194 N.W.2d 624 (1972).

We know that traffic accidents cause a staggering number of deaths, personal injuries and property losses in Wisconsin.[10] Indeed the legislature might reasonably believe that a Wisconsin citizen is more likely to be killed or injured on the highway than at home or in the streets as a result of criminal conduct.[11] It would not be

[10] The figures for deaths and injuries resulting from traffic accidents for the years 1973 through 1976 are as follows:

| Year | Deaths | Injuries |
|------|--------|----------|
| 1973 | 1157 | 57,252 |
| 1974 | 912 | 53,992 |
| 1975 | 940 | 57,076 |
| 1976 | 947 | 58,983 |

Wisconsin Accident Facts, 1976 (1977 edition), page 2, published by Wisconsin Department of Transportation, Division of Motor Vehicles, Traffic Accident Data Section.

[11] The figures for murders and nonnegligent homicides and crimes of violence for the years 1973 through 1976 are as follows:

| Year | Murders and non-negligent homicides | Violent crimes |
|------|-------------------------------------|----------------|
| 1973 | 118 | 5,272 |
| 1974 | 138 | 6,411 |
| 1975 | 150 | 6,991 |
| 1976 | 140 | 6,343 |

Wisconsin Criminal Justice Information Crime and Arrests, 1976, Department of Justice, Division of Law Enforcement Services.

As the State notes in its brief, the figures given above regarding the number of violent crimes are not readily comparable with the figures given for personal injuries due to traffic accidents (*see* note 10 *supra*). Some victims of violent crimes do not sustain personal injury (*e.g.* some victims of robbery), and some victims of crimes not included in these figures, *e.g.* misdemeanor batteries, do sustain personal injury.

unreasonable for the legislature to believe that vigorous enforcement of the Motor Vehicle Code is urgently needed to deter dangerous highway conduct and to promote highway safety.

We further know that a substantial number of children over sixteen drive and cause a significant number of accidents involving death, personal injury and property damage.[12] The legislature might reasonably believe that by requiring criminal court jurisdiction over sixteen and seventeen-year-olds charged with violations of the Motor Vehicle Code, it would make enforcement of the Code uniform and more effective and thereby decrease danger on the highways. As Hart notes, criminal court jurisdiction carries with it publicity and the possibility of a criminal record and a criminal sanction. We conclude that the legislature might reasonably believe that mandatory criminal court jurisdiction, rather than juvenile court jurisdiction, over Motor Vehicle Code offenses by sixteen and seventeen-year-olds is more likely to deter children from Code violations.

Hart challenges this rationale by pointing out that criminal conduct proscribed by provisions outside the Motor Vehicle Code can cause danger on the highway.[13] A child sixteen or over charged with violation of one of these sections would fall within the discretionary jurisdiction of the juvenile court. That the legislature has not brought such cases under mandatory criminal court jurisdiction is not a basis for finding an equal protection violation, however. If "the law presumably hits the evil where it is most felt, it is not to be overthrown

---

[12] In 1976 8.6 percent of all male drivers involved in traffic accidents and 8.9 percent of all female drivers involved in traffic accidents were sixteen or seventeen years old. Wisconsin Accident Facts, 1976, *supra*, note 10, at pp. 14–15.

[13] *See, e.g.,* secs. 940.08, 940.09 and 941.03(1), Stats.

because there are other instances to which it might have been applied." *State ex rel. Baer v. Milwaukee,* 33 Wis.2d 624, 634, 148 N.W.2d 21 (1967), quoting *West Coast Hotel Co. v. Parrish,* 300 U.S. 379, 400 (1937).

Hart contends that the legislative classification excluding children over sixteen accused of violating the Motor Vehicle Code from juvenile jurisdiction offends the purposes of the Children's Code. Hart correctly describes a principal purpose of the Children's Code as being "to promote the best interests of the children of this State." Sec. 48.01(2), Stats. But Hart's argument ignores that the legislature also intended that the Children's Code be construed and interpreted with "the interest of the public" in mind. Sec. 48.01(3), Stats. The interest of the public, including youthful drivers, is served by highway safety.

Hart has not carried his burden of proving it arbitrary or invidious for the legislature, having regard to the public good, to endeavor to promote highway safety by enforcing the provisions of the Motor Vehicle Code similarly against all persons over sixteen who use the public highways.[14]

*By the Court.*—Order reversed and cause remanded for further proceedings not inconsistent with this opinion.

---

[14] Legislative exclusion of children charged with certain crimes from the jurisdiction of the juvenile justice system is not unusual and challenges to these provisions as violations of due process and equal protection have generally not prevailed. *See* Annot., *Homicide by Juevnile-Jurisdiction,* 48 A.L.R.2d 663, 671–681 (1956); *United States v. Bland,* 472 F.2d 1329, 1333–1334 (D.C. 1973); *United States v. Quinones,* 516 F.2d 1309 (C.A. Puerto Rico, 1975) *cert. denied* 423 U.S. 852; *Woodard v. Wainwright,* 566 F.2d 781 (5th Cir. 1977); *Mason v. Henderson,* 337 F. Supp. 35 (E.D. La. 1972); *Prevatte v. Director, Patuxent Institution,* 248 A.2d 170 (Md. 1968); *State v. Ayers,* 260 A.2d 162, 170–171 (Del. 1969); and *United States ex rel. DeFlumer v. Mancusi,* 443 F.2d 940, 942 (2d Cir. 1971), *cert. denied* 404 U.S. 914 (1971).