STATE of Wisconsin, Plaintiff-Respondent,

v.

Damone J. BLOCK, Defendant-Appellant.†

Court of Appeals

*No. 97–3265–CR. Submitted on briefs September 25, 1998.—Decided October 28, 1998.*

(Also reported in 587 N.W.2d 914.)

†Petition to review denied.

588

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James M. Weber* of Brookfield.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Sally L. Wellman,* assistant attorney general.

Before Brown, Nettesheim and Anderson, JJ.

BROWN, J. Damone J. Block appeals from a judgment of conviction as a persistent repeater for assault by a prisoner. First, he challenges the constitutionality of the persistent repeater statute, § 939.62(2m)(b), STATS., also known as the "three strikes" law, on equal protection grounds.[1] Block claims that the legislature's classification of some crimes as "serious" for purposes of the statute is arbitrary and has no rational basis. Second, he claims that the State failed to prove all of the elements of the assault charge. Specifically, he contends that his victim could not have been in apprehension of a battery because it was a surprise attack. We hold that the statute does not offend principles of equal protection. Further, we conclude that the onset of apprehension of a battery may occur while the battery is in progress. We thus affirm Block's conviction.

---

[1] Section 939.62(2m)(b), STATS., has recently been reorganized and renumbered. *See* 1997 Wis. Act 326, §§ 6–11. The changes were not in effect when this case began. Moreover, the changes do not affect the substance of the persistent repeater statute.

The incident leading to Block's conviction occurred at the Oshkosh Correctional Institute. Block was incarcerated there for second-degree murder and attempted first-degree murder. His victim in this case was a social worker employed at the institution. On the day she told him he was to be moved to another institution, Block approached her from behind while she was leaving the grounds and struck her three or four times in the head with a padlock wrapped in a sock. Block was charged with battery by a prisoner, contrary to § 940.20(1), STATS., and assault by a prisoner, contrary to § 946.43(1), STATS. For the assault count, Block was charged as a persistent offender under Wisconsin's "three strikes—you're out" law, § 939.62(2m)(b), STATS. The jury found Block guilty on both counts and Block was sentenced to life imprisonment pursuant to the persistent repeater statute.

### Equal Protection

Block first contends that the persistent repeater statute violates the Equal Protection Clauses of both the United States and Wisconsin Constitutions. *See* U.S. CONST. amend. XIV, § 1; WIS. CONST. art. I, § 1. Block asserts that the legislature's classification of what is considered a serious felony for purposes of the three strikes statute is arbitrary and unreasonable. The result is that similarly situated offenders are treated differently, contrary to the principles of equal protection. The arbitrariness of the classification, Block claims, is demonstrated by the fact that the "serious" list in § 939.62(2m), STATS., does not follow the general classification of felonies. *See* § 939.50, STATS. (classifying felonies as A, B, BC, C, D and E and setting a maximum penalty for each category). For example, there are Class B and C felonies on the serious list, but

treason, a Class A felony, is not on the list. *See* §§ 939.62(2m), 946.01, STATS. Block also finds it telling that assault by a prisoner is a serious crime under the statute, while battery by a prisoner is not. This is so even though assault by a prisoner does not require physical harm to the victim, but battery by a prisoner does. *See* §§ 940.20(1), 946.43(1), STATS. As a further indication of the unreasonableness of the choice of included crimes, Block claims that "[a]bout half of the class C felonies are considered 'serious'. . . [but] [t]here is nothing that differentiates the chosen class C felonies from those that are deemed not to be 'serious.' " According to Block, the legislature's choice of which crimes are serious under the statute is "patently arbitrary and completely irrational" and thus an "unconstitutional violation of the principles of equal protection."

The constitutionality of a statute is a question of law we review de novo. *See Castellani v. Bailey*, 218 Wis. 2d 245, 260, 578 N.W.2d 166, 173 (1998). Upon review, the legislature is presumed to have acted within its constitutional limits. *See id.* at 261, 578 N.W.2d at 173. A party challenging a statute has the burden of proving its unconstitutionality beyond a reasonable doubt. *See id.*

To attack a statute on equal protection grounds, the challenger must show that the statute treats similarly situated people differently. *See id.* The principles to be applied in an equal protection case have been discussed at length elsewhere and we only briefly outline them here. *See State v. Hart*, 89 Wis. 2d 58, 64–65, 277 N.W.2d 843, 846 (1979). The level of judicial scrutiny the court employs in reviewing the law depends on

the type of classification involved. *See Castellani,* 218 Wis. 2d at 261–62, 578 N.W.2d at 174. Strict scrutiny is only appropriate when the classification unduly burdens the exercise of a fundamental right or impermissibly disadvantages a suspect class. *See id.* Otherwise, the suitable analysis is whether the classification rationally furthers a legitimate government purpose. *See id.* at 262, 578 N.W.2d at 174. Under this analysis, the statute will be upheld if any conceivable set of facts could reasonably justify it. *See Hart,* 89 Wis. 2d at 65, 277 N.W.2d at 847.

Block concedes that the persistent repeater statute deserves only the rational basis test. He argues that there are no reasonable or practical grounds for the manner in which the legislature has chosen serious crimes under § 939.62(2m), STATS. We do not agree.

The legislature is permitted broad discretion in enacting laws that affect some groups differently than others. *See Hart,* 89 Wis. 2d at 65, 277 N.W.2d at 847. A law will flunk the rational basis test only if the classification it creates is completely irrelevant to the law's purpose. *See id.* The legislature need not state the purpose or rationale justifying the classification. *See State v. Martin,* 191 Wis. 2d 646, 658, 530 N.W.2d 420, 425 (Ct. App. 1995). As long as there is a plausible explanation for the classification, the reviewing court will look no further. *See id.* The legislature's underlying assumptions may even be "erroneous, but the very fact that they are 'arguable' is sufficient, on rational-basis review, to 'immunize' the [legislative] choice from constitutional challenge." *Id.* at 658, 530 N.W.2d at 425 (quoting *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 320 (1993)).

The determination of which crimes deserve what penalties is one of the core functions of the legislature. As we stated in *Martin*, 191 Wis. 2d at 656, 530 N.W.2d at 424:

> [T]raditionally, the right to classify crimes and enact procedures that travel to "deterrability" and "depreciation" are for society. The voice of society in this country is the legislature. It follows that the legislature has the responsibility for enacting laws reflecting society's appreciation of the seriousness of one crime as opposed to another.

Thus, it is entirely within the legislature's power to classify crimes, recognize different degrees of harm that result from them and decide which more urgently need repression. *See id.* at 658, 530 N.W.2d at 425. Furthermore, "[t]he legislature may choose to address one evil at a time, as long as that choice is reasonable." *Id.* at 659, 530 N.W.2d at 426.

Block initially argues that the determination of which crimes are serious for purposes of the persistent repeater statute is arbitrary because it does not follow the general classification of felonies under § 939.50, STATS. He points out that some Class C felonies are included as serious, but not all. He contends that "[t]here is nothing that differentiates the chosen class C felonies from those that are deemed not to be 'serious.' "

First, we note that only six Class C felonies are included as serious under the repeater statute.[2] *See*

---

[2] The Class C felonies included as serious are: homicide by intoxicated use of vehicle or firearm, § 940.09, STATS.; aggravated battery by an act done with intent to cause substantial or great bodily harm, § 940.19(5), STATS.; assaults by prisoners,

§ 939.62(2m)(a)2, STATS. All six involve bodily harm or crimes against children. Many of the Class C felonies not included are property crimes. *See, e.g.,* § 943.10, STATS. (burglary). True, there are some violent Class C felonies the legislature chose not to include. *See, e.g.,* § 940.23(1)(a), STATS. (first-degree reckless injury); § 941.20(3), STATS. (intentional discharge of a firearm from a vehicle). However, as we stated above, the legislature may address one evil at a time. *See Martin,* 191 Wis. 2d at 659, 530 N.W.2d at 426. And, it is the role of the legislature to determine which crimes are in need of more urgent repression than others. *See id.* at 658, 530 N.W.2d at 425. The legislature may have found the included crimes to be more common than those not included, or may be addressing "one evil at a time." *See id.* at 659, 530 N.W.2d at 426. We do not require that the legislative rationale be articulated. *See id.* at 658, 530 N.W.2d at 425. Because the classification does not "[rest] on grounds wholly irrelevant to the achievement of the State's objective," we will not tamper with it. *Id.* at 657, 530 N.W.2d at 425 (quoted source omitted). The decision of which crimes to include is for the legislature, not the courts, and we will not second-guess that decision. *See Castellani,* 218 Wis. 2d at 265, 578 N.W.2d at 175 ("[I]t is not our task to determine the wisdom of the rationale or the legislation") (quoted source omitted).

As another example of what he perceives to be legislative arbitrariness, Block points to the inclusion of assault by a prisoner, but not battery by a prisoner, as a serious crime under the persistent repeater stat-

§ 946.43, STATS.; physical abuse of a child by intentionally causing bodily harm, § 948.03(2)(c), STATS.; sexual exploitation of a child, § 948.05, STATS.; and solicitation of a child to commit a Class B felony, § 948.35(1)(c), STATS.

ute. Assault by a prisoner, § 946.43(1), STATS., does not require bodily harm. Rather, it requires that an inmate put an employee, visitor or another inmate of the institution in apprehension of a battery likely to cause death or great bodily harm. *See id.* Assault by a prisoner is a Class C felony. Battery by a prisoner, § 940.20(1), STATS., requires that an inmate intentionally cause bodily harm to an employee, visitor or another inmate of the institution. *See id.* It is a Class D felony. Block claims that it makes no sense to include the first but not the second as serious since assault by a prisoner does not require bodily harm, but battery by a prisoner does.

First, as the State points out, Block's argument fails by his own logic. Battery by a prisoner is a Class D felony, while assault by a prisoner is a Class C felony. It makes sense, then, that assault is considered serious while battery is not. Second, there are conceivable reasons the legislature might have chosen to include one but not the other. In an institutional setting, there are many situations in which an inmate could engage in behavior that might result in minimal physical injury to an employee or another inmate, yet not warrant the invocation of the persistent repeater statute. In contrast, an inmate placing an employee of an institution in fear of immediate death or great bodily harm is a serious threat in an institutional setting. We conclude that there are reasons to support the legislature's choice to include one but not the other under the repeater statute.

### Sufficiency of Evidence

Block's next claim is that there was insufficient evidence to prove all of the elements of assault by a

595

prisoner. Those elements are: (1) the defendant was a prisoner at the time of the offense, (2) the victim was an employee of the institution, (3) the defendant placed the victim in apprehension of an immediate battery likely to cause death or great bodily harm, (4) the defendant intended to place the victim in apprehension of an immediate battery likely to cause death or great bodily harm, and (5) the defendant knew that the victim was an employee of the institution. *See* WIS J I—CRIMINAL 1778. Block claims that because his attack was a surprise, the victim could not have been in apprehension of it. In response to the State's argument that the apprehension began after the first but before the subsequent blows, Block contends that "[a]pprehension . . . is fear of what is *about* to occur, not what *is* occurring." He also claims that intent to place the victim in apprehension was not proven, as his attack was meant to be a surprise.

■

In reviewing the sufficiency of the evidence, an appellate court may not reverse a conviction unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value that no reasonable jury could have found guilt beyond a reasonable doubt. *See State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752, 755 (1990). The reviewing court may not substitute its own judgment for that of the jury. *See id.* at 507, 451 N.W.2d at 757–58. If the jury could reasonably have drawn an inference of guilt from the evidence presented, the appellate court may not overturn the verdict. *See id.* at 507, 451 N.W.2d at 758. Furthermore, it is the function of the jury, not the reviewing court, to decide which evidence is credible and which is not. *See id.* at 503, 451 N.W.2d at 756.

■
Here, ample evidence was presented to permit the jury to conclude that Block's victim was in apprehension of an immediate battery and that Block intended to place her in such apprehension. The victim testified that prior to the attack she had seen Block outside her office frequently, staring at her. On the day of the attack, the victim had informed Block that he was to be moved to a more secure building. When she was leaving the building, she felt a blow to her head, looked over her shoulder and saw Block. The victim recalled that after that first blow she "knew it was a real problem when [she] realized [she] was getting hit more than once." Based on the testimony, the jury could have concluded that after that first blow she was in apprehension of an immediate battery—the subsequent blows—and that Block, through all of his actions up to and including the attack, intended to place her in such apprehension. There was enough evidence presented for the jury to reach such a conclusion.

Because the classification of crimes under the persistent repeater statute does not violate the Equal Protection Clauses, and because there was sufficient evidence for the jury to find Block guilty, we affirm Block's conviction.

*By the Court.*—Judgment affirmed.