STATE of Wisconsin, Plaintiff-Respondent,

v.

Alan L. RADKE, Defendant-Appellant-Petitioner.

Supreme Court

*No. 01–1879–CR. Oral argument January 15, 2002.—Decided February 26, 2003.*

2003 WI 7

(Also reported in 657 N.W.2d 66.)

14

For the defendant-appellant-petitioner there were briefs and oral argument by *William E. Schmaal,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Sandra L. Nowack,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

¶ 1.   SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE.   This is a review of a published decision of the court of appeals, *State v. Radke,* 2002 WI App 146, 256 Wis. 2d 448, 647 N.W.2d 873, affirming the judgment of conviction of the Circuit Court for Dane County, Steven D. Ebert, Judge.

¶ 2.   Alan L. Radke, the defendant, was convicted of repeated acts of sexual assault of the same child, in violation of Wis. Stat. § 948.025(1) (1997–1998),[1] and was also convicted of being a persistent repeater under Wis. Stat. § 939.62(2m)(a)1m., (b)2., and (c), commonly known as Wisconsin's "two strikes" law.[2] He was sentenced to life imprisonment without the possibility of parole.

---

[1] All references to the Wisconsin Statutes are to the 1997–1998 version unless otherwise noted.

[2] Wisconsin Stat. § 939.62(2m)(a)1m., (b)2., and (c) compose the "two strikes" law and read as follows:

(2m)(a) In this subsection:

1m. "Serious child sex offense" means any of the following:

a. A violation of s. 948.02, 948.025, 948.05, 948.055, 948.06, 948.07, 948.08 or 948.095 or 948.30 or, if the victim was a minor and the

16

¶ 3.   The defendant challenges the constitutionality of the "two strikes" law. The challenge focuses on a comparison of Wisconsin's "two strikes" law and Wisconsin's "three strikes" law[3] in light of the statutory

convicted person was not the victim's parent, a violation of s. 940.31.

b. A crime at any time under federal law or the law of any other state . . . .

. . . .

(b) The actor is a persistent repeater if one of the following applies:

. . . .

2. The actor has been convicted of a serious child sex offense on at least one occasion at any time preceding the date of violation of the serious child sex offense for which he or she presently is being sentenced under ch. 973, which conviction remains of record and unreversed.

. . . .

(c) If the actor is a persistent repeater, the term of imprisonment for the felony for which the persistent repeater presently is being sentenced under ch. 973 is life imprisonment without the possibility of parole or extended supervision.

[3] Wisconsin Stat. § 939.62(2m)(a)2m., (b)1., and (c) compose the "three strikes" law and read as follows:

(2m)(a) In this subsection:

. . . .

2m. "Serious felony" means any of the following:

a. Any felony under s. 961.41(1), (1m) or (1x) if the felony is punishable by a maximum prison term of 30 years or more.

b. Any felony under s. 940.01, 940.02, 940.03, 940.05, 940.09(1), 940.16, 940.19(5), 940.195(5), 940.21, 940.225(1) . . . .

. . . .

(b) The actor is a persistent repeater if one of the following applies:

17

felony classification system.[4] Under the statutory felony classification system, a Class A felony has a greater maximum penalty than a Class B felony. The

1. The actor has been convicted of a serious felony on 2 or more separate occasions at any time preceding the serious felony for which he or she presently is being sentenced under ch. 973, which convictions remain of record and unreversed and, of the 2 or more previous convictions, at least one conviction occurred before the date of violation of at least one of the other felonies for which the actor was previously convicted.

. . . .

(c) If the actor is a persistent repeater, the term of imprisonment for the felony for which the persistent repeater presently is being sentenced under ch. 973 is life imprisonment without the possibility of parole or extended supervision.

[4] Wisconsin Stat. § 939.50(1) and (3) provide as follows:

(1) Except as provided in ss. 946.43(2m)(a), 946.83 and 946.85, felonies in chs. 939 to 951 are classified as follows:

(a) Class A felony.

(b) Class B felony.

(bc) Class BC felony.

(c) Class C felony.

(d) Class D felony.

(e) Class E felony.

. . . .

(3) Penalties for felonies are as follows:

(a) For a Class A felony, life imprisonment.

(b) For a Class B felony, imprisonment not to exceed 40 years.

(bc) For a Class BC felony, a fine not to exceed $10,000 or imprisonment not to exceed 20 years, or both.

(c) For a Class C felony, a fine not to exceed $10,000 or imprisonment not to exceed 10 years, or both.

18

"two strikes" law, however, mandates that the *second* conviction for a Class B felony "serious child sex offense" be punished by life imprisonment without the possibility of parole, while the "three strikes" law mandates that the *third* conviction for a Class A homicide felony be punished by life imprisonment without the possibility of parole.

¶ 4. In short, the defendant argues that it is irrational and therefore unconstitutional for the legislature to authorize a more serious punishment for a single conviction of first-degree intentional homicide (a Class A felony) than for a single conviction of first-degree sexual assault of a child (a Class B felony) under the felony classification system while simultaneously punishing a second first-degree child sexual assault conviction more severely than a second first-degree intentional homicide conviction.

¶ 5. The precise question raised, therefore, is whether the "two strikes" law violates the Due Process Clause of either the United States or Wisconsin Constitution because it requires a greater penalty to be imposed on an offender convicted of a second Class B non-fatal child sexual assault than the statutes require to be imposed on an offender convicted of a second Class A felony homicide offense.[5]

---

(d) For a Class D felony, a fine not to exceed $10,000 or imprisonment not to exceed 5 years, or both.

(e) For a Class E felony, a fine not to exceed $10,000 or imprisonment not to exceed 2 years, or both.

[5] *See State v. Asfoor,* 75 Wis. 2d 411, 249 N.W.2d 529 (1977) (addressing a constitutional challenge to a statute based on its relationship to another statute).

A court imposing a sentence for a first or second Class A homicide conviction retains discretion to impose life imprison-

¶ 6. The circuit court, on a pretrial motion, ruled that the "two strikes" law was a reasonable exercise of the legislature's power to determine appropriate criminal penalties and thus was constitutional. The court of appeals affirmed the conviction. It presumed that the legislature had an interest in protecting children from repeat sex offenders whom the legislature viewed as more likely to re-offend than other serious felons and concluded that the "two strikes" law is rationally related to that interest under either a due process or equal protection analysis.

¶ 7. We conclude, as did the court of appeals, that the defendant's constitutional challenge to the "two strikes" law fails. The legislature's interest in protecting the public from child sexual assault offenders, a particular subset of offenders with a perceived high rate of recidivism who victimize an especially vulnerable segment of the population, makes it rational for the legislature to impose a greater penalty on an offender convicted of a second Class B non-fatal child sexual assault than on an offender convicted of a second Class A homicide offense.[6]

ment without the possibility of parole. Therefore it is possible that a person convicted of a second Class B sexual assault and a person convicted of a first or second Class A homicide will receive the same sentence of life imprisonment without the possibility of parole. Nevertheless we state the issue in terms of the most disparate possible sentences for purposes of analyzing the defendant's constitutional challenge.

[6] The defendant argues that his claim presents a substantive due process challenge. Because the court of appeals addressed an equal protection challenge, the defendant argues, in the alternative, that the "two strikes" law violates equal protection of the laws. The defendant asserts, however, that the two constitutional doctrines are closely related (but not completely

¶ 8. The relevant facts of this case are few. In 1986, the defendant was convicted of first-degree sexual assault of a child, contrary to Wis. Stat. § 940.225(1)(d) (1983–1984), which proscribes sexual contact or sexual intercourse with a person 12 years of age or younger.[7] The defendant was sentenced to five years' probation with nine months in jail as a condition of his probation. Violation of § 940.225(1)(d) was a Class B felony.[8]

¶ 9. On March 16, 1999, the State charged the defendant with committing repeated acts of sexual assault of the same child,[9] in violation of Wis. Stat.

---

coterminous) and that a violation of one may be recharacterized as a violation of the other in the present case.

The defendant and the State acknowledge that the test for either constitutional challenge in the present case is whether the legislature had a rational basis for enactment of the "two strikes" law. Accordingly, we address the defendant's claim under substantive due process. *See Thorp v. Town of Lebanon,* 2000 WI 60, ¶ 50, 235 Wis. 2d 610, 612 N.W.2d 59 (noting the similarity between the tests for a violation of equal protection and of substantive due process).

[7] Wisconsin Stat. § 940.225(1) (1983–1984) reads, in relevant part: "First-degree sexual assault. Whoever does any of the following is guilty of a Class B felony: . . . (d) Has sexual contact or sexual intercourse with a person 12 years of age or younger."

[8] Wisconsin Stat. § 940.225(1) (1983–1984) is the precursor of Wis. Stat. § 948.02(1), which also classifies the offense as a class B felony.

[9] The second conviction was not for acts committed against the child who was the victim of his original sexual assault. Rather, the reference to "same child" comes from Wis. Stat. § 948.025 and refers to an independent series of acts committed against a single child, giving rise to his second conviction.

§ 948.025(1), a Class B felony.[10] As a result of his prior conviction for first-degree sexual assault of a child, the State also charged the defendant as a "persistent repeater" under Wis. Stat. § 939.62(2m). The defendant entered a not guilty plea and then filed a motion to dismiss the repeater charge, arguing that it violated his right to due process. The circuit court denied his motion.

¶ 10. The jury convicted the defendant as charged. The circuit court denied the defendant's motion for post-conviction relief, and as required by the "two strikes" law, the circuit court sentenced him to life in prison without the possibility of parole.[11] The defendant's conviction was upheld by the court of appeals, and we granted review.

¶ 11. The constitutionality of a statute is a question of law that this court determines independently of

---

[10] Wisconsin Stat. § 948.025(1) reads as follows: "Whoever commits 3 or more violations under s. 948.02(1) or (2) within a specified period of time involving the same child is guilty of a Class B felony."

Wisconsin Stat. § 948.02(1) makes it a crime of first-degree sexual assault to have sexual contact or intercourse with a person under the age of 13. Wisconsin Stat. § 948.02(2) makes it a crime of second-degree sexual assault to have sexual contact or intercourse with a person under the age of 16.

[11] The defendant filed a post-conviction motion arguing that he was entitled to a new trial because Wis. Stat. § 948.025(1) does not require juror unanimity on which of the five or six alleged incidents constituted the three violations of § 948.02(1) or (2) and is therefore unconstitutional. He also challenged the circuit court's restitution order. The circuit court denied his motion for a new trial but did modify the restitution order. These issues are not raised before this court.

22

the circuit court and court of appeals, yet with the benefit of the analyses of these courts. All statutes enjoy a presumption of constitutionality and the heavy burden of overcoming this presumption lies with the person attacking the statute.[12] This court will sustain a statute against a constitutional challenge if there is "any reasonable basis" for the statute.[13] That reasonable basis need not be expressly stated by the legislature; if the court can conceive of facts on which the legislation could reasonably be based, it must uphold the legislation as constitutional.[14]

¶ 12. In this case, the defendant attacks the statute as unconstitutional under the Due Process Clause of the state and federal constitutions.[15] In addition to

---

[12] *State v. Borrell*, 167 Wis. 2d 749, 762, 482 N.W.2d 883 (1992).

[13] *State v. McManus*, 152 Wis. 2d 113, 129, 447 N.W.2d 654 (1989).

[14] *McManus*, 152 Wis. 2d at 129.

[15] The Fourteenth Amendment to the United States Constitution provides, in relevant part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law."

Article I, Section 1 of the Wisconsin Constitution states: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness." Article I, Section 8 of the Wisconsin Constitution further states: "No person may be held to answer for a criminal offense without due process of law." Both Wisconsin Constitution clauses have been cited as a source of substantive due process protection. *Compare Dowhower v. West Bend Mut. Ins. Co.*, 2000 WI 73, ¶ 12, 236 Wis. 2d 113, 613 N.W.2d 557 (substantive due process is protected by Article I, Section 1), *and Thorp*, 235 Wis. 2d 610, ¶ 45 (substantive due process is protected by Article I, Section 8).

the procedural protections provided by the Due Process Clause, there is also "a substantive component that bars certain arbitrary, wrongful government actions."[16] Substantive due process forbids a government from exercising "power without any reasonable justification in the service of a legitimate governmental objective."[17]

 ¶ 13.  The defendant argues that the "two strikes" law is "illogical, irrational, and arbitrary *as a method of executing the legislature's overall determination of penal policy*"[18] and therefore violates his constitutional right to due process of law. According to the defendant, a child sexual assault is a less serious crime than a homicide offense. The defendant points out that the Wisconsin legislature has indicated that Class A felony offenses are more serious crimes than Class B felony offenses by imposing a higher maximum penalty for Class A felony offenses than for Class B felony offenses. Moreover, felony classification system aside, the defendant asserts that *non-homicide* child sexual assaults are inherently less serious than *homicide* offenses. Consequently, the defendant argues, a second child sexual assault cannot rationally be punishable by a more severe penalty than a second homicide offense. Yet convicted persons are considered persistent repeaters and sentenced to mandatory terms of life imprisonment without the possibility of parole after two convictions

[16] *State v. Post*, 197 Wis. 2d 279, 302, 541 N.W.2d 115 (1995)(quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990))).

[17] *Thorp*, 235 Wis. 2d 610, ¶ 45 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

[18] Brief and Appendix of Defendant-Appellant-Petitioner at 17 (emphasis in original).

for Class B child sexual assault but are not so sentenced after two convictions for Class A homicide.

¶ 14. The State responds that the "two strikes" law is a rational legislative attempt to protect children from sexual violence by incapacitating repeat offenders who are not likely to be rehabilitated. Moreover, according to the State, the fact that a second conviction for a Class B felony might result in a more severe sentence than a second conviction for a Class A felony is consistent with the overall felony classification system in Wisconsin, which sets only maximum penalties for each felony class and permits other factors, such as the character of the offender and the need to protect the public from that particular offender, to establish the actual sentence to be imposed.

¶ 15. We begin our constitutional analysis with an examination of the relevant statutes. Wisconsin Stat. § 939.50 establishes Wisconsin's felony classification system. Under § 939.50, felonies are grouped into one of six different classes with letter designations A, B, BC, C, D, and E. The legislature has assigned a maximum penalty to each of these classes. Class A felonies have been assigned the most severe maximum penalty of life imprisonment.[19] Class E felonies have been assigned the least severe maximum penalty of a fine not to exceed $10,000 or imprisonment not to exceed 2 years, or both.[20]

---

[19] The sentence for a Class A felony is a mandatory life sentence. *See* Wis. Stat. § 939.50(3)(a). However, the sentencing judge has the discretion to set a date for parole eligibility. *See* Wis. Stat. § 973.014.

[20] Wis. Stat. § 939.50(3)(f) (1997–1998).

¶ 16.    Wisconsin Stat. § 939.62 is Wisconsin's repeat offender statute, containing the "two strikes" and "three strikes" laws. For more than a century, Wisconsin laws have authorized courts to enhance the sentences of repeat offenders. By 1993 Act 289, the legislature enacted the "three strikes" law, creating a new subcategory of repeat offenders known as "persistent repeaters".[21] Persistent repeaters under the "three strikes" law are defendants who have been convicted of two offenses, each of which the legislature has designated as a "serious felony," and are presently being sentenced for a third such offense.

¶ 17.    Several, but not all, Class A, B, BC, and C felonies have been given the "serious felony" designation under the "three strikes" law. These designated felonies range from Class A felonies such as first-degree intentional homicide to Class C felonies such as assault by a prisoner.[22] Persistent repeaters under the "three strikes" law face a mandatory sentence of life in prison without the possibility of parole upon conviction of the third "serious felony."

¶ 18.    The legislature added to this new persistent repeater subcategory of repeat offenders by 1997 Act 326, the "two strikes" law. Included in this second group of persistent repeaters are defendants who have been convicted of one offense that the legislature has designated as a "serious child sex offense" and who are being

Under Wis. Stat. § 939.50 (1999–2000), the maximum penalties for all felony classes have been increased, except for Class A felonies. Class E felonies are now punishable by up to 5 years imprisonment.

[21] *See* Wis. Stat. § 939.62(2m)(b)1., (c).

[22] *See* Wis. Stat. § 939.62(2m)(a)2m.

sentenced for a second such offense.[23] Several Class B, BC, C, and D felonies, primarily those addressing sex-related offenses targeting children, are given the "serious child sex offense" designation. These designated felonies under the "two strikes" law range from Class B felonies such as repeated sexual assault of the same child to Class D felonies such as causing a child to view or listen to sexual activity. Persistent repeaters under the "two strikes" law face a mandatory sentence of life in prison without the possibility of parole. Thus, included in the "two strikes" law are some felonies with less severe maximum penalties than some felonies included in the "three strikes" law.

¶ 19. Because a Class A felony is subject to a harsher maximum sentence than a Class B felony, it does appear at first blush that a second Class A homicide conviction should also be subject to a harsher sentence than a second Class B child sexual assault conviction. Upon further analysis, however, we are not persuaded that the lack of symmetry between the "two strikes" law and the "three strikes" law, in light of the felony classification system, is irrational and violates substantive due process. In short, the considerations that determine criminal penalties for particular crimes under Wisconsin law are more complicated than a quick reference to the felony classification system admits.

¶ 20. Wisconsin's felony classification system establishes maximum allowable penalties for each class of felonies that reflect, as a general rule, the "degree of actual or potential harm [to both persons and property] involved in their commission."[24] The graduated maxi-

---

[23] *See* Wis. Stat. § 939.62(2m)(a)1m., (b)2.

[24] *See* Legislative Council Note, 1977, Wis. Stat. Ann. § 939.50 (West 1996).

mum punishments reflect a legislative penchant for imposing more severe punishments on people guilty of crimes resulting in death or serious physical harm and for imposing more severe punishments for crimes against persons than against property.[25] Thus, by subjecting Class A offenders to the most severe maximum penalty, the legislature has determined that greater harm is caused by the commission of a Class A felony than by commission of a different class felony.

¶ 21. Importantly, however, the maximum penalties set under the felony classification system do not take other traditional sentencing factors into consideration. The mere fact that a felony receives a Class B label, for instance, does not necessarily reflect a legislative assessment of the character of the offender or the harm to the public that that offender represents. Rather, the legislature has adopted indeterminate sentencing that leaves consideration of factors such as general and specific deterrence, rehabilitation, retribution, and incapacitation to the sentencing court in each individual case.[26]

¶ 22. The maximum penalty for a Class C felony at the time of the defendant's second conviction, for example, was a fine not to exceed $10,000 or imprisonment not to exceed ten years, or both.[27] The maximum penalty for a Class D felony was a fine not to exceed $10,000 or imprisonment not to exceed five years, or both.[28] Yet under Wisconsin's indeterminate sentencing, a person who committed a Class C felony might

---

[25] *See id.*

[26] *See In re Felony Sentencing Guidelines,* 120 Wis. 2d 198, 200–01, 353 N.W.2d 793 (1984).

[27] Wis. Stat. § 939.50(3)(c).

[28] Wis. Stat. § 939.50(3)(d).

28

have been sentenced to three years while a person who committed a Class D felony might have gotten the maximum five years, depending on the circumstances of the crime itself and the offender as weighed by the sentencing court.

¶ 23. Furthermore, the maximum penalty of a given felony class can be increased. The legislature has mandated enhanced penalties for the commission of crimes under particular circumstances. For example, the legislature has provided that a sentence is increased in certain cases based upon the vulnerability of the victim.[29] In other situations, the legislature has determined that a sentencing court may enhance the maximum sentence for a given crime when the offender engages in certain conduct in the course of his criminal act.[30] In still other situations, the legislature has established that a penalty is enhanced beyond the maximum established under the felony classification system when a crime is committed in a specific location.[31]

¶ 24. The legislature has thus established an overall sentencing scheme in which the commission of a less serious class felony, under certain circumstances set forth in the statutes, exposes an offender to a

---

[29] *See, e.g.,* Wis. Stat. § 939.647 (increasing the penalty for violent felony committed against an elder person).

[30] *See, e.g.,* Wis. Stat. § 939.64 (increasing the maximum term of imprisonment by 10 years for the commission of a felony while wearing a bulletproof vest); Wis. Stat. § 939.641 (increasing the penalty for commission of a crime while concealing identity).

[31] *See, e.g.,* Wis. Stat. § 939.632 (increasing the maximum period of imprisonment for the commission of certain violent crimes in a school zone).

greater penalty than he would be exposed to had he committed a more serious class felony.[32]

¶ 25.   The "two strikes" law, as part of the general repeat offender statute, is a penalty enhancer that attaches to crimes committed under particular circumstances.[33] The "two strikes" law represents the legislative determination that in certain circumstances— namely, when an offense is committed by a person with a particular criminal history that demonstrates a propensity to re-offend—the maximum penalty attached to a crime under the felony classification system no longer limits the sentencing court.[34] Indeed, the "two strikes" law not only increases the maximum sentence allowable but also mandates that the most severe penalty under Wisconsin law be imposed.

¶ 26.   The issue in this case is whether there is a rational basis to justify mandating the penalty of life imprisonment *without* the possibility of parole under the circumstances of a second conviction of a child sexual assault when the penalty is life imprisonment *with* the possibility of parole under the circumstances of a second conviction of a Class A homicide offense.

---

[32] *See, e.g.,* Wis. Stat. § 940.08 (homicide by negligent handling of a dangerous weapon, explosives or fire is a Class D felony); § 939.64 (increasing the maximum term of imprisonment by ten years for commission of a felony while wearing a bulletproof vest).

[33] *See State v. Saunders,* 2002 WI 107, ¶ 16, 255 Wis. 2d 589, 649 N.W.2d 263 ("Wis. Stat. § 939.62 is one of many statutory provisions that enhance a convicted criminal defendant's potential exposure to confinement.").

[34] The prosecutor has discretion whether to charge the defendant as a repeater. Wis. Stat. § 973.12(1).

¶ 27.   The legislature did not expressly state a rationale for the "two strikes" law, and 1997 Wis. Act 326, creating the "two strikes" law, does not contain specific legislative findings to support the law. The absence of a legislative pronouncement, however, is not fatal.[35] A statute will survive a constitutional challenge if this court can conceive of a rational basis for the law.[36] We conclude that a rational basis exists in the present case for the coexistence of the "two strikes" and "three strikes" laws in light of Wisconsin's felony classification system.[37]

¶ 28.   The most obvious basis for the "two strikes law" is that the legislature believes that there are greater incidents of recidivism among people who commit serious child sex offenses and that the interests of public safety therefore demand incarceration without the possibility of parole for those offenders who demonstrate that they have not been sufficiently deterred

---

[35] *Heller v. Doe by Doe,* 509 U.S. 312, 320 (1993).

[36] *McManus,* 152 Wis. 2d at 129.

[37] The defendant's argument is presented as a facial challenge to the "two strikes" law, and the defendant disputes the court of appeals' references to the law "as applied" in his case. Determining when an "as applied" challenge is appropriate and when a "facial" challenge is appropriate "has long troubled courts and scholars alike." *Schultz v. Natwick,* 2002 WI 125, ¶ 15, ¶ 20 n.19, 257 Wis. 2d 19, 653 N.W.2d 266. We hold that a rational basis exists for inclusion of non-fatal Class B child sexual assault felonies under the "two strikes" law and Class A homicide felonies under the "three strikes" law. Whether the rationale supports other non-fatal offenses listed under the "two strikes" law is not before us.

by their first conviction.[38] The legislature could reasonably determine that the need for incarceration without the possibility of parole is especially acute when children, a particularly vulnerable segment of the population, are the explicit targets of the offenses.[39]

---

[38] Statements made by State Representative Mark Green, the act's sponsor, explicitly indicate that a reason for the law was the perceived high recidivism rate among child sex offenders. *See* Amy Rinard, *Life Term for Child Sex Crimes Advances,* Milwaukee J. Sentinel, Nov. 6, 1997, at 1.

As the court of appeals correctly notes, despite the fact that experts dispute the threat of recidivism posed by child sex offenders, there is some evidence supporting the conclusion that child sex offenders, particularly those with prior convictions, pose a greater risk of recidivism than other offenders. *See State v. Radke,* 2002 WI App 146, ¶ 10 n.8, 256 Wis. 2d 448, 647 N.W.2d 873.

The legislature's assumptions about recidivism may be erroneous, but they are arguably correct and that is sufficient on a rational basis review to protect the legislative choice from constitutional challenge. *State v. Block,* 222 Wis. 2d 586, 592, 587 N.W.2d 914 (Ct. App. 1998) (citing *State v. Martin,* 191 Wis. 2d 646, 658, 530 N.W.2d 420, 425 (Ct. App. 1995) (quoting *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 320 (1993))).

[39] Indeed, the defendant concedes that a legitimate purpose of the "two strikes" law is to protect children from becoming the victims of sexual assaults and that if the legislature has come to believe that child sex offenders have a high recidivism rate, the legislature could have decided that an individual who has committed two sexual assaults against a child is likely to do so again and is unlikely to be rehabilitated. Brief and Appendix of Defendant-Appellant-Petitioner at 16–17. The defendant's challenge, again, is that there is no rational basis for including certain non-fatal offenses under the "two strikes" law while simultaneously including certain homicide offenses under the "three strikes" law.

¶ 29. The legislature has broad authority to define what conduct constitutes a crime and the appropriate penalties,[40] bound by the constitutional bar against cruel and unusual punishment and guarantees of due process of law and equal protection.[41] "[T]he legislature has the responsibility for enacting laws reflecting society's appreciation of the seriousness of one crime as opposed to another. The legislature also has the obligation to measure the kinds of sanctions that will, in society's judgment, best deter future criminality."[42]

¶ 30. The "two strikes" law focuses on crimes of sexual conduct that victimize children committed by people who have already been convicted of a similar crime. It represents a legislative determination that offenders convicted under these particular circumstances pose a unique threat to society and must therefore face the maximum penalty allowable under Wisconsin law. The "three strikes" law, in contrast,

---

[40] *In re Felony Sentencing Guidelines,* 120 Wis. 2d 198, 203, 353 N.W.2d 793 (1984) ("The legislature determines what constitutes a crime in Wisconsin and establishes maximum penalties for each class of crime."); *Spannuth v. State,* 70 Wis. 2d 362, 367, 234 N.W.2d 79 (1975) ("It is a well-established proposition in our system of separate branches of government that the authority to punish is a matter for the legislature.").

[41] The "three strikes" law has withstood a constitutional challenge alleging that the law violates the cruel and unusual punishment provision. *See State v. Lindsey,* 203 Wis. 2d 423, 554 N.W.2d 215 (Ct. App. 1996). The "three strikes" law has also survived an equal protection challenge alleging arbitrariness in the designation of certain crimes as "serious" and therefore subject to the "three strikes" law. *See State v. Block,* 222 Wis. 2d 586, 587 N.W.2d 914 (Ct. App. 1998).

[42] *State v. Martin,* 191 Wis. 2d 646, 656, 530 N.W.2d 420 (Ct. App. 1995).

encompasses a wider swath of criminal conduct. It expresses a legislative determination that offenders who commit two of these crimes do not pose the same type of unique threat as persistent repeaters under the "two strikes" law. The legislature has determined that there is something especially troublesome about the threat posed by a repeat child sex offender that does not arise when a person is convicted of a child sex offense after a prior conviction for a different serious felony that does not involve sexual conduct targeting a minor.

¶ 31. The inclusion of certain felonies in each of the two persistent repeater laws need not have been done with "mathematical nicety."[43] The felonies need only have a rational basis to be constitutional. When a statute reasonably addresses the dangers created by one group of offenders, it is not constitutionally infirm just because it does not apply to all offenders to whom it might have been applied.[44]

¶ 32. This court's decision in *State v. Asfoor,* 75 Wis. 2d 411, 249 N.W.2d 529 (1977), upon which the defendant relies, does not compel a contrary result. The *Asfoor* decision analyzed the constitutionality of a statute, considering the relationship of that statute to another. The *Asfoor* decision concluded that there was no conceivable rational basis for the legislature to punish a person more severely for negligent use of a weapon resulting in bodily injury than for the exact same negligent use of a weapon where it resulted in death of the victim. "The same negligent conduct may be a felony or misdemeanor with the determining factor

---

[43] *Heller,* 509 U.S. at 321.

[44] *State v. Post,* 197 Wis. 2d 279, 329–30, 541 N.W.2d 115 (1995).

being whether death or injury resulted. The irrationality of this classification results from the felony being imposed for causing injury and the misdemeanor for causing death."[45]

¶ 33.  The defendant argues that *Asfoor* stands for the proposition that it is always irrational to make a non-fatal crime of a certain type of culpable conduct punishable by a more serious penalty than a crime of the same type of culpable conduct that results in death. Yet the *Asfoor* decision does not suggest such a broad holding. *Asfoor* does not hold that it is always irrational for the non-fatal crime of negligent use of a weapon to be punishable by a greater penalty than negligent use of a weapon resulting in death. Rational reasons may exist for punishing the negligent use of a weapon resulting in bodily injury more severely than the same conduct resulting in death under certain circumstances.

¶ 34.  The defendant in the *Asfoor* decision was not subject to a more severe penalty as a result of distinct circumstances surrounding the commission of his offense. The issue addressed by this court in *Asfoor* was whether a rational basis existed for the legislature to declare generically that "one who causes the death of another human being by a high degree of negligence in the operation or handling of a firearm commits a misdemeanor, while someone who causes bodily harm in the same manner commits a felony."[46]

¶ 35.  The "two strikes" law at issue in the present case imposes the more severe penalty on a person convicted of a non-fatal child sexual assault who had previously been convicted of a child sexual assault. In this way, the "two strikes" law is limited to a particular

---

[45] *Asfoor,* 75 Wis. 2d at 440–41.
[46] *Id.* at 440.

subset of offenders who repeatedly victimize a particular subset of people and holds them out for especially harsh penalties. Thus, unlike in *Asfoor,* the legislature's more severe penalty for certain offenders convicted of non-fatal crimes under the "two strikes" law is neither irrational nor unconstitutional.

¶ 36.   For the reasons set forth above, we conclude that the legislature's interest in protecting the public from child sexual assault offenders, a particular subset of offenders with a perceived high rate of recidivism who victimize an especially vulnerable segment of the population, makes it rational for the legislature to impose a greater penalty on an offender convicted of a second Class B non-fatal child sexual assault than on an offender convicted of a second Class A felony homicide offense. We therefore hold that the defendant's constitutional challenge to the "two strikes" law fails.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 37.   JON P. WILCOX, J., did not participate.