Metropolitan Milwaukee Association of Commerce, Inc., Plaintiff-Respondent,

v.

City of Milwaukee, Defendant,

9to5 National Association of Working Women, Milwaukee Chapter, Intervenor-Defendant-Appellant.

Court of Appeals

*No. 2009AP1874–AC. Submitted on briefs October 16, 2010. —Decided March 24, 2011.*

2011 WI App 45

(Also reported in 798 N.W.2d 287.)

460

462

466

467

On behalf of the intervenor-defendant-appellant, the cause was submitted on the briefs of *Barbara Zack Quindel* and *Richard Saks* of *Hawks Quindel, S.C.*, Milwaukee. There was oral argument by *Barbara Zack Quindel.*

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Scott C. Beightol* and *Joseph Louis Olson* of *Michael Best & Friedrich LLP*, Milwaukee. There was oral argument by *Joseph Louis Olson.*

A nonparty brief was filed by *Tony Gibart, Sharyn Tejani,* and *Ian Henderson,* Madison, on behalf of the Wisconsin Coalition Against Domestic Violence, the Wisconsin Coalition Against Sexual Assault, and the National Partnership for Women and Families.

A nonparty brief was filed by *Ion B. Meyn,* Madison, on behalf of the Wisconsin Democracy Campaign.

Before Vergeront, P.J., Lundsten and Higginbotham, JJ.

¶ 1. VERGERONT, P.J. This appeal concerns an ordinance providing paid sick leave for employees within the City of Milwaukee that was enacted pursuant to the direct legislation statute, WIS. STAT. § 9.20 (2009–10).[1] Metropolitan Milwaukee Association of

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

Commerce (MMAC) filed this action challenging the ordinance on statutory and constitutional grounds. The circuit court granted summary judgment and injunctive relief in favor of MMAC, concluding the ballot statement did not comply with § 9.20(6) and that certain provisions in the ordinance were not rationally related to the City's police powers and were not severable from the rest of the ordinance.

¶ 2. We disagree with the circuit court and conclude that the proponents of the ordinance, not MMAC, are entitled to summary judgment. Specifically, we hold:

I. The ballot did comply with the statutory requirement that it contain "a concise statement of [the ordinance's] nature" under WIS. STAT. § 9.20(6).

II. The ordinance as a whole and the specific challenged provisions do not violate substantive due process because there is a rational relationship to the City's police powers.

III. The ordinance is not preempted by state statutes.

IV. The ordinance is not preempted by the National Labor Relations Act (NLRA) or the Labor Management Relations Act (LMRA).

V. The ordinance does not violate the state and federal constitutional prohibitions against impairment of contracts.

VI. The ordinance does not regulate activity outside the City limits.

VII. The two-year period under § 9.20(8), during which the ordinance may not be repealed or amended except by a vote of the electors, excludes the time between the circuit court's issuance of the temporary injunction and the vacation of the permanent injunction by the circuit court pursuant to this opinion.

471

¶ 3. Accordingly, we reverse and remand with directions to grant summary judgment in favor of 9to5 and to vacate the permanent injunction.

## BACKGROUND

¶ 4. WISCONSIN STAT. § 9.20, the direct legislation statute, permits city and village electors to initiate legislation by submitting a petition requesting that the governing body either adopt the attached proposed ordinance without alteration or submit it to the local electors for a vote. § 9.20(1), (4). Pursuant to this statute, a coalition of organizations, led by the Milwaukee Chapter of 9to5 National Association of Working Women, initiated a drive for a petition seeking to enact a proposed ordinance requiring paid sick leave for employees within the City. After the required number of signatures were collected and the petition was filed, the Milwaukee Common Council decided not to enact the ordinance but to place it on the ballot for the November 4, 2008, election. Notice of the election containing the full text of the proposed ordinance, identified as Common Council File 080420, along with the ballot question, was published and posted as required by WIS. STAT. §§ 9.20(5) and 5.35(6)(a). The ballot question asked: "Shall the City of Milwaukee adopt Common Council File 080420, being a substitute ordinance requiring employers within the City to provide paid sick leave to employees?"

¶ 5. There were 157,117 "yes" votes (68.64%) and 71,131 "no" votes (31.16%). Pursuant to WIS. STAT. § 9.20(7), the ordinance became effective upon its publication on November 12, 2008.[2]

---

[2] WISCONSIN STAT. § 9.20(7) provides: "If a majority vote in favor of adoption, the proposed ordinance or resolution shall

¶ 6. Shortly thereafter MMAC filed this action seeking a declaration that the ordinance was invalid on a number of statutory and constitutional grounds and requesting temporary and permanent injunctive relief. The circuit court granted a temporary injunction and then granted summary judgment in favor of MMAC and a permanent injunction.

¶ 7. With respect to MMAC's challenge to the ballot question, the court concluded that it did not meet the "concise statement" requirement of WIS. STAT. § 9.20(6) because it did not contain enough information about the ordinance. In particular, the court ruled, the ballot did not inform voters that the ordinance required paid sick leave for two reasons the court found were outside the commonly accepted understanding of sick leave: to seek relocation due to domestic or sexual violence or stalking and to prepare for or participate in a civil or criminal legal proceeding related to domestic or sexual violence. MILWAUKEE CODE OF ORDINANCES (MCO) § 112–5.1.c-4, c-5 (2008). The court also concluded that these two provisions were not rationally related to the police powers of the City and therefore rendered the ordinance unconstitutional. The court rejected the request of the City and of 9to5, which had been permitted to intervene, to sever these portions from the rest of the ordinance. On the remainder of MMAC's challenges to the validity of the ordinance, the court ruled against MMAC.[3]

take effect upon publication under sub. (5). Publication shall be made within 10 days after the election."

[3] We certified to the supreme court the issue whether the ballot question complied with the statutory requirement that it contain "a concise statement of [the ordinance's] nature," under WIS. STAT. § 9.20(6) and whether the two-year bar in § 9.20(8) against repeals or amendments of an ordinance validly adopted

## DISCUSSION

¶ 8. We address the following issues on 9to5's appeal:[4]

I. Does the ballot question contain "a concise statement of [the ordinance's] nature," as required by Wis. Stat. § 9.20(6)?

II. Does the ordinance as a whole or specific challenged provisions violate substantive due process because there is no rational relationship to the City's police powers?

III. Is the ordinance preempted by a state statute, specifically, the Minimum Wage Law, Family/Medical Leave Act, or Worker's Compensation Act?

IV. Is the ordinance preempted by a federal statute, specifically the National Labor Relations Act or the Labor Management Relations Act?

V. Does the ordinance violate the state and federal constitutional prohibitions against impairment of contracts?

VI. Does the ordinance regulate activity outside the City limits?

---

is affected by the injunction. The supreme court accepted certification but remanded to this court because the six justices hearing the case were equally divided on whether to affirm or reverse the circuit court. Based on the parties' request, we have supplemented our record with their supreme court briefs.

[4] The City is not an appellant. Two amicus briefs were filed in this court: one by the Wisconsin Democracy Campaign and another by the Wisconsin Coalition Against Domestic Violence, the Wisconsin Coalition Against Sexual Assault, and the National Partnership for Women and Families.

VII. How does the injunction issued by the circuit court affect the two-year period under Wis. Stat. § 9.20(8), during which the ordinance may not be repealed or amended except by a vote of the electors?[5]

¶ 9. Because we are reviewing the grant of a motion for summary judgment, our review is de novo. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–16, 401 N.W.2d 816 (1987). A party is entitled to summary judgment if there are no genuine issues of material fact and that party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2). Although our review is de novo and although we disagree with the circuit court on some of the issues, the court's extensive analysis is helpful to this court.

I. Ballot Question

¶ 10. The heart of the parties' dispute over the ballot question is the degree of specificity required by Wis. Stat. § 9.20(6), which provides: "The ordinance or resolution need not be printed in its entirety on the ballot, but a concise statement of its nature shall be printed together with a question permitting the elector to indicate approval or disapproval of its adoption."

¶ 11. 9to5 argues that the phrase "a concise statement of [the ordinance's] nature" means a concise

---

[5] MMAC also argues that the ordinance is so vague as to violate the due process clauses of the state and federal constitutions. We do not address this argument because it is not adequately developed. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments).

statement of the general purpose of the proposed ordinance—its "nature." According to 9to5, because the nature of the proposed ordinance is that it requires employers to provide paid sick leave to employees in the City, the statement on the ballot, together with a reference to the ordinance number, satisfies the statutory requirement. More detail is not required, 9to5 asserts, because the purpose of this concise statement is not to inform voters of the specific provisions of the ordinance; that function is fulfilled by the published notices and the posting at the polling place required by other statutory provisions.

¶ 12. MMAC responds that more detail is required by case law establishing that the ballot must contain "every essential" element of the proposed ordinance. According to MMAC, the circuit court correctly ruled that the relocation and legal action uses of sick leave must be stated on the ballot, along with other essential elements.

¶ 13. Resolution of the parties' dispute requires us to construe WIS. STAT. § 9.20(6) in light of the case law involving the same or similar provisions. We divide our discussion into four sections. In section A, we examine the statutory language at issue—"a concise statement of [the ordinance's] nature"—and conclude that in isolation the common meaning of this phrase encompasses the constructions advanced by both parties. In section B, we discuss the case law on which the parties rely. We conclude the case law does not require, as MMAC contends and the circuit court agreed, that we employ the "every essential element" standard; but we also conclude that the case law does not provide a complete answer to the proper construction of § 9.20(6). In section C, with the guidance provided by case law, we examine the disputed phrase in its statutory context.

476

We conclude that § 9.20(6), properly construed, means "a brief statement of the general purpose of the proposed ordinance." In section D, we apply the proper construction of § 9.20(6) to the ballot question in this case and conclude it was sufficient.

### A. Common Meaning of Statutory Terms

¶ 14. When we construe statutory language we give it its common meaning, *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110, and we may use a standard dictionary for this purpose. *Swatek v. County of Dane*, 192 Wis. 2d 47, 61, 531 N.W.2d 45 (1995). We focus on the meanings of "concise" and "nature" in the phrase "a concise statement of [the ordinance's] nature."

¶ 15. The common meaning of "concise" is "marked by brevity in expression or by compact statement without elaboration or superfluous detail." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 471 (1993). 9to5 asserts that the statement of the nature of the ordinance must be brief, and this meaning fits within the first alternative meaning. MMAC, on the other hand, argues that "concise" does not necessarily mean "brief" because, if there is a lengthy ordinance, the ballot question can be concise without being brief. This fits within the second alternative, "compact . . . without elaboration or superfluous detail." *Id.*

¶ 16. The common meaning of "nature" relevant in this context also encompasses the constructions proposed by both parties. "Nature" means "the essential character or constitution of something, . . . esp: the essence or ultimate form of something [or] the distinguishing qualities or properties of something." WEBSTER'S

477

THIRD NEW INTERNATIONAL DICTIONARY 1507 (1993). The first alternative supports 9to5's position that the essential character of the proposed ordinance is that it requires employers to provide paid sick leave to employees. The alternative of "distinguishing qualities or properties" supports MMAC's position that the ballot statement should identify all the essential elements.

¶ 17. Because the common meanings of "concise" and "nature" encompass the proposed constructions of both parties, we conclude both constructions are reasonable when the phrase is viewed in isolation. However, we do not interpret statutory language in isolation but as part of the whole statute, and this analysis includes a consideration of the purpose as expressed in the text. *See Kalal,* 271 Wis. 2d 633, ¶¶ 46, 48. In this case, in addition, we must consider the case law that may bear on the proper interpretation of WIS. STAT. § 9.20(6). We turn to that case law now, before examining the statutory context of § 9.20(6).

*B. Case Law*

¶ 18. We discuss the cases chronologically beginning with *State ex rel. Elliott v. Kelly,* 154 Wis. 482, 143 N.W. 153 (1913).[6] This is the only case brought to our attention that involves the validity of a ballot statement

---

[6] *State ex rel. Elliott v. Kelly,* 154 Wis. 482, 485, 143 N.W. 153 (1913), involved WIS. STAT. § 39i (1913), the first version of the direct legislation statute, enacted by 1911 Wis. Laws, ch. 513.

9to5 cites a later case decided under a subsequent version of the direct legislation statute, *State ex rel. Oaks v. Brown,* 211 Wis. 571, 575, 249 N.W. 50 (1933), applying WIS. STAT. § 10.43 (1931). However, this version of the statute did not contain the requirement for "a concise statement of the nature [of the

under the direct legislation statute. In *Elliott* the proposed ordinance called for establishing the office of superintendent of trade and commerce, while the ballot stated the proposed office was that of chamber of commerce. *Id.* at 483–84. The court concluded this error was not "fatally material" because the voters "knew what [the ordinance] was for," since it "had been brought to their attention in the manner provided by law." *Id.* at 485. The court rejected the idea that the clerk's error should invalidate the results, stating:

> So long as it is reasonably clear that the electors expressed their will respecting the adoption of the ordinance, the fact that they did it somewhat inartificially should not be regarded as rendering their effort inefficient. *The statute requires the ballot in such a case to contain "a concise statement of the nature" of the ordinance. Any brief collection of words which will fairly accomplish that, is sufficient.*

*Id.* at 486 (emphasis added).

¶ 19. Although *Elliott* addresses the effect of an inaccuracy in the ballot statement, not the degree of detail required, the above italicized language supports 9to5's view on the meaning of the disputed language. "Any brief collection of words which will fairly accomplish [a concise statement of the nature of the ordinance]," *id.*, suggests the "brief statement of general purpose" that 9to5 advocates rather than the more

ordinance]"—unlike the original enactment in effect when *Elliot* was decided, § 39i(4) (1913), and unlike § 9.20(6). *See* § 10.43 (1931). The decision in *Oaks* that the lack of information in the ballot question did not invalidate the ordinance was based on reasoning that is not applicable here. *Oaks*, 211 Wis. at 582. WISCONSIN STAT. § 10.43 (1965) was amended and renumbered to § 9.20 (1967) by 1966 Wis. Laws, ch. 666, § 1, and this version contained the subsection (6) at issue on this appeal.

detailed "every essential element" standard that MMAC advocates. In addition, *Elliot* supports 9to5's position that the notices required by statute are intended to perform the function of informing voters of the specifics of the ordinance and, if the required notice has been given, the adequacy of the ballot question is evaluated in that context.

¶ 20. The rest of the cases we discuss involve a statute governing elections on referenda, a statute that, at the time these cases were decided, also required that a "concise statement of the nature thereof" be contained on the ballot. Specifically, WIS. STAT. § 6.23(8) (1923) (1927) and (1953), since amended and now codified at § 5.64(2)(am), required that the "concise statement" be on the ballot for proposed constitutional amendments "or any measure . . . submitted to a vote of the people."[7]

¶ 21. *State ex rel. Ekern v. Zimmerman*, 187 Wis. 180, 201, 204 N.W. 803 (1925), a constitutional amendment case, is the original source of the language on which MMAC relies for construing WIS. STAT. § 9.20(6) to require a statement that "reasonably, intelligently, and fairly comprise[s] or [has] reference to every essential" of the ordinance. The relevant issue in *Ekern* is whether the constitution permitted the legislature to delegate by statute to the Secretary of State the duty to prepare the form of the ballot question for the referen-

---

[7] 9to5 refers us to two cases decided under these statutes that we do not discuss because they do not address the degree of specificity required by the "concise statement of the nature thereof" language: *Morris v. Ellis*, 221 Wis. 307, 317, 266 N.W. 921 (1936) (addressing a mistake in the ballot question's formulation that the court described as "hypercritical"), and *McConkey v. Van Hollen*, 2010 WI 57, 326 Wis. 2d 1, 783 N.W.2d 855 (addressing whether that constitutional amendment violated the constitutional provision requiring separate votes on separate amendments).

dum on the proposed constitutional amendment. *Ekern,* 187 Wis. at 201–02.[8] The court concluded that the constitution did not require the legislature itself to prescribe the form. *Id.* at 201. In explaining this conclusion, the court made the statement on which MMAC relies: "In other words, even if the form is prescribed by the legislature it must reasonably, intelligently, and fairly comprise or have reference to every essential of the amendment." *Id.*

¶ 22. Read in context, it is not apparent that the *Ekern* court means that the ballot question itself must "fairly comprise or have reference to every essential of the amendment." The court described the ballot question, which was one sentence, as "clear and unambiguous" and then explained that, while the whole amendment was not on the ballot, the statutory publication requirement—which did contain the whole amendment —had been satisfied. *Id.* at 204–05. This notice, the court stated, was "in reality a part of the submission." *Id.* at 205. We agree with 9to5 that this particular part of the *Ekern* court's analysis lends support to 9to5's position.

¶ 23. However, as MMAC correctly points out, in the subsequent case of *State ex rel. Thomson v. Zimmerman,* 264 Wis. 644, 659, 60 N.W.2d 416 (1953), the court unmistakably reads the "every essential" language from *Ekern* as addressing the sufficiency of the "concise statement" required by Wis. Stat. § 6.23(8) (1953).[9] *Thomson,*

---

[8] Article XII, section 1 of the Wisconsin Constitution provides that, when the majority of the legislature agrees to a proposed amendment, "it shall ... submit such proposed amendment ... to the people in such manner and at such time as the legislature shall prescribe."

[9] Currently the legislature is required to include the statement of the referendum question in the legislation approving a proposed constitutional amendment, Wis. Stat. § 13.175, and

481

like *Ekern*, concerned a constitutional amendment. But despite the *Thomson* court's adoption of "every essential" as the standard, the court expressly did not decide whether that ballot statement met this standard. *Id.* Instead, the *Thomson* court concluded that the ballot statement was inaccurate because it represented the proposed amendment to require apportionment of senate districts along certain lines when the proposed amendment did not so mandate. *Id.* at 660. Thus, while *Thomson* adopts the "every essential" standard, it does not provide guidance on how to apply that standard.

■

¶ 24. A more significant limitation of *Thomson* as applied to this case is that it is not clear whether the *Thomson* court views the "every essential" standard as appropriate for ballot statements besides those for constitutional amendments. However, a municipal referendum case decided the very next year under WIS. STAT. § 6.23(8) (1953), *City of Milwaukee v. Sewerage Commission*, 268 Wis. 342, 67 N.W.2d 624 (1954), persuades us that the supreme court has not adopted the "every essential" standard outside the context of constitutional amendments.

¶ 25. *City of Milwaukee* applied the "concise statement" language in WIS. STAT. § 6.23(8) (1953) in the context of a referendum on whether a town should be consolidated with the City of Milwaukee. In rejecting the argument that the consolidation statute implied that a full text of the ordinance must be on the ballot, the court concluded this was not required by the phrase "concise statement of the nature of the [ordinance]."

that statement must be a "concise statement of each question in accordance with the act or resolution directing submission." § 5.64(2)(am).

*City of Milwaukee*, 268 Wis. at 358. The court held that the ballot question did substantially comply with this requirement. *Id.* The ballot question provided:

> Shall ordinance No. 732 of the city of Milwaukee, passed in accordance with section 66.02 of the Wisconsin statutes . . . to consolidate the town of Lake with the city of Milwaukee in the county of Milwaukee . . . on the terms and conditions set forth therein be ratified?

*Id.* The court reasoned:

> The primary consideration in a situation of this nature is the ascertainment of the voter's intent. It is clear that the voter was called upon to ratify the terms and conditions of the consolidation ordinance adopted by his respective government. *Reference to the full ordinances was set forth in the referendum question.*

*Id.* at 358–59 (emphasis added). The court also concluded that, based on the publication and distribution of the entire ordinance, "no voter could have been misled by the procedure employed in the submission of these questions." *Id.* at 359.

¶ 26. Not only did the court in *City of Milwaukee* not refer to *Ekern* or *Thomson* or the "every essential" standard, but the analysis in *City of Milwaukee* cannot be reconciled with this standard. The ballot question ruled sufficient in *City of Milwaukee* simply identified the proposed ordinance by number and stated its general purpose—to consolidate the two identified municipalities. The ballot question did not specify any of the terms and conditions of the proposed consolidation but simply referred to "the terms and conditions set forth [in the identified ordinance]."

¶ 27. MMAC contends that a case decided after *City of Milwaukee*, *State ex rel. Thomson v. Peoples*

*State Bank*, 272 Wis. 614, 76 N.W.2d 370 (1956), supports its position that the ballot question must contain every essential element of the ordinance. However, we conclude that *Peoples State Bank* does not address the specificity issue and thus does not undermine the ruling in *City of Milwaukee*.

¶ 28. The issue in *Peoples State Bank* was whether a vote on a proposed constitutional amendment was invalid because, although the ballot question was accurate, the notice of election erroneously described the effect of the proposed amendment.[10] *Peoples State Bank*, 272 Wis. at 620–22. The court concluded the error in the notice of election did not invalidate the ballot question, which, the court said, "was what the electors came directly in contact with . . . presumably read . . . and it is natural to assume that the question on the ballot was controlling." *Id.* at 622. The court acknowledged it could not tell how many electors read the erroneous explanation, but stated it was "inconceivable that as many as 45,000 electors [approximately the number of "yes" votes that would have had to vote "no" to change the outcome] would read it or that they were misled in their voting." *Id.* at 621.

¶ 29. MMAC reads *Peoples State Bank* as establishing the principle that the only reliable source of the voters' knowledge is the ballot question because it is

---

[10] At the times relevant to *State ex rel. Thomson v. Peoples State Bank*, 272 Wis. 614, 76 N.W.2d 370 (1956), and *State ex rel. Thomson v. Zimmerman*, 264 Wis. 644, 60 N.W.2d 416 (1953), the statute applicable to constitutional amendments, Wis. Stat. § 6.10 (1953), required the Secretary of State to prepare an explanation of the change made by a proposed constitutional amendment and attach it to the proposed amendment; this was then part of the notice required to be published at specific times before the next general election. *See also* Wis. Stat. § 6.11 (1953).

impossible to know how many voters read the statutory notices. From this, MMAC argues that the ballot question must contain all the essential information the voter needs to vote intelligently on the ordinance. We do not agree. *Peoples State Bank* does not address the meaning of the statutory term—"concise statement of [the ordinance's] nature"—at issue here. Nor does *Peoples State Bank* suggest that the statutory notice requirements are irrelevant in deciding how to interpret this term.

¶ 30. In summary, our review of the case law leads us to conclude that only in the context of constitutional amendments has the supreme court adopted the "every essential" standard. *See Thomson*, 264 Wis. at 659. The court did not apply this standard the very next year to a municipal referendum under the same statute, Wis. STAT. § 6.23(8) (1953). *See City of Milwaukee*, 268 Wis. at 358–59. Instead, in *City of Milwaukee* the court concluded that a ballot statement that identifies the ordinance by number, gives its general purpose, and refers the voter to the ordinance for "the terms and conditions," constitutes a "concise statement of the nature of the [ordinance]." *Id.* In light of *City of Milwaukee*, there is no basis for reading *Thomson* as overruling the *Elliot* court's statement that under the direct legislation statute "[a]ny brief collection of words which will fairly accomplish [a concise statement of the ordinance's nature] is sufficient." *Elliott*, 154 Wis. at 486.

¶ 31. However, while *Elliot* remains binding in interpreting Wis. STAT. § 9.20(6), it does not provide a complete analysis. That is, it tells us that § 9.20(6) requires only a "brief" statement, but it does not, except perhaps indirectly, aid in determining the meaning of "the nature [of the ordinance]." And, while the ballot

question upheld in *City of Milwaukee* is indistinguishable in terms of specificity from the ballot question in this case, *City of Milwaukee* does not itself resolve whether the same analysis is appropriate under the direct legislation statute, § 9.20. To fill in these gaps, we analyze § 9.20(6) in the context of the statutory scheme.

## C. Statutory Context

¶ 32. There are two features of the statutory scheme of WIS. STAT. § 9.20 that are of particular significance in interpreting § 9.20(6).

¶ 33. First, the statutory scheme requires publication and posting of the entire ordinance. Several notices meeting the statutory criteria must be published before the election in newspapers that are aimed at a wide circulation. *See* WIS. STAT. §§ 9.20(5), 10.06(3)(f), 10.04. Certain of these notices must contain the entire text of the ordinance, along with the date of the election, the entire text of the question and an explanatory statement of the effect of either a "yes" or "no" vote. §§ 10.06(3)(f), 10.01(2)(c). In addition, a notice with this information must be posted at each polling place on election day. WIS. STAT. § 5.35(6)(a)1.[11] Because of these notice requirements, in particular the posting at each polling place, it is evident that every elector entering the voting booth has had the opportunity to read the entire ordinance along with the ballot question before—in fact just moments before—reading the ballot in the voting booth and casting his or her vote. This suggests that the legislature did not intend to

---

[11] As already noted in the background section, there is no dispute that the required publication and posting occurred in this case.

rely on the ballot question to inform the voter about the details of the proposed ordinance's content.

■

¶ 34. Second, proposed ordinances initiated by the electorate under Wis. Stat. § 9.20 may be lengthy, complex pieces of legislation. This follows from the fact that in § 9.20 the legislature has reserved local legislative powers to the people. *Mount Horeb Cmty. Alert v. Village Bd.*, 2003 WI 100, ¶ 16, 263 Wis. 2d 544, 665 N.W.2d 229. While there are certain limitations implicit in § 9.20 regarding the subject matter of a proposed ordinance, there is no limit on the comprehensiveness or complexity of the legislative measures subject to § 9.20.[12] The ordinance at issue in this case is an example of a complex piece of legislation. It includes a definitional section; twelve subsections on the accrual of sick leave; four subsections on the use of sick leave; and sections on enforcement, retaliation, notice, and confidentiality.

¶ 35. A statement of "every essential" element of an ordinance of this type makes for a lengthy statement, and *Elliot* has said that only a brief statement is required. More problematic with such complex legislation is whether there is a workable standard as to what constitutes an "essential element." Both these points are illustrated in this case.

¶ 36. MMAC's own proposals on what should have been included contain variations from one another, and

---

[12] The limitations are: "[a]n ordinance . . . 1) must be legislative as opposed to administrative or executive in nature; 2) cannot repeal an existing ordinance; 3) may not exceed the legislative powers conferred upon the governing municipal body; and 4) may not modify statutorily prescribed procedures or standards." *Mount Horeb Cmty. Alert v. Village Bd.*, 2003 WI 100, ¶ 17, 263 Wis. 2d 544, 665 N.W.2d 229 (citation omitted).

the proposed statement submitted to this court before oral argument was a decidedly non-brief 220–word, five-paragraph question.

¶ 37. This last proposed statement by MMAC also highlights the problem of determining which features are essential. MMACs proposal describes the number of hours annually that employers must make available for paid sick leave, the permitted uses of paid sick leave—with specific descriptions of the relocation and legal action provisions—and the confidentiality provision. MMAC stated that this last proposal identified the "primary issues" for the voter. But why would voters be more interested in how a small portion of employees would use limited amounts of sick leave (the domestic and sexual violence related relocation and legal action uses) than in features that appear to be more basic, such as the rate at which sick leave is accrued, the carry-over-to-the-next-calendar-year provision, and the enforcement mechanism?

¶ 38. In short, when applied to complex legislation, MMAC's proposed standard creates uncertainty over what terms are properly considered "essential." It appears that the only "safe" way to fashion a ballot question under MMAC's standard is to make it nearly as complex and lengthy as the underlying legislation. However, this approach makes little sense in light of the fact that the legislature has directed that the full text be published and posted.

¶ 39. Based on our consideration of WIS. STAT. § 9.20(6) in the context of the statutory scheme and in light of *Elliot's* "[a] brief collection of words," we conclude the more reasonable construction of § 9.20(6) is that it requires a brief statement of the general purpose of the proposed ordinance.

## D. Application of Statute

■

¶ 40. The final step is to apply our construction of WIS. STAT. § 9.20(6) to the ballot in this case. The statement in the ballot question identifies the ordinance by number and describes it as an "ordinance requiring employers within the city to provide paid sick leave to employees." We conclude this is a brief statement of the general purpose of the ordinance and it therefore satisfies the requirement in § 9.20(6) of "a concise statement of [the ordinance's] nature."

¶ 41. We disagree with the circuit court's conclusion that two of the provisions describing permitted uses of sick leave—relocation due to domestic or sexual violence or stalking and participation in a civil or criminal legal proceeding related to domestic or sexual violence—needed to be specifically stated on the ballot. The court decided that sick leave is not commonly understood to mean time off for these reasons. In arriving at this conclusion, the court referred to statutes and regulations governing sick leave for state employees[13] and to a dictionary defining sick leave as "an absence from work permitted because of illness." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1089 (10th ed. 1997).

---

[13] The circuit court referred to WIS. STAT. § 36.30, which governs the University of Wisconsin System and provides for "[l]eave of absence . . . owing to sickness . . .," and to WIS. STAT. § 230.35(2), which provides for "[l]eave of absence with pay" for state employees "owing to sickness." The implementing rules for § 36.30 define "sick leave" to include absence "due to personal illness, injury, disability or pregnancy as well as attendance on a member of the immediate family of the employee whose condition or death requires the employee's direct care . . . ." WIS. ADMIN. CODE § UWS 19.01.

¶ 42. Whether or not the uses of sick leave permitted under the ordinance are typical when compared to other paid sick leave plans, none of the uses need to be listed on the ballot in order to fulfill the requirements of Wis. Stat. § 9.20(6). As we have already explained, every voter had the opportunity to read the full ordinance at the polling place if he or she were not already familiar with it.

¶ 43. As for the circuit court's and MMAC's suggestion that leave for the purposes of relocation and legal action cannot reasonably be considered sick leave and must be some other kind of leave, we disagree. In the next section, we conclude that these two provisions have a rational relationship to the health (as well as to the safety and general welfare) of the City's residents. While that constitutional analysis is distinct from the issue of construing Wis. Stat. § 9.20(6), that rational relationship necessarily means that time off for these two purposes may reasonably be viewed as related to health.

¶ 44. In summary, we conclude the ballot question contains a statement that complies with Wis. Stat. § 9.20(6).

II. Police Powers/Substantive Due Process

¶ 45. MMAC challenges the ordinance on the ground that it is not a valid exercise of the City's police powers. The circuit court concluded that the objective of the ordinance is to "protect the public welfare, health, safety and prosperity of the City in order to ensure a decent and healthy life for the people of the City and their families" and that this objective is limited, by the findings in the "whereas" clauses of the ordinance, to "traditional health conditions and related needs." The

490

court further concluded that the relocation and legal action provisions are not rationally related to this objective.

¶ 46. 9to5 argues on appeal that the circuit court applied an incorrect standard because it required that the ordinance itself explain how these two particular provisions relate to the purpose of the ordinance and because it did not accord the deference required when a legislative enactment is challenged as outside the police powers. According to 9to5, the correct standard is whether these two provisions—and the other provisions in the ordinance—bear a rational relationship to any legitimate municipal objective, which, under Wis. STAT. § 62.11(5), includes "the health, safety, and welfare of the public." A proper application of the correct standard, asserts 9to5, results in the conclusion that these two provisions, like the rest of the ordinance, are rationally related to the health, safety, and welfare of the people of the City.

¶ 47. MMAC responds that the circuit court correctly considered the stated objectives of the ordinance to circumscribe the purposes that may be considered in the analysis but erred in concluding that only the relocation and legal action provisions were invalid. According to MMAC, the ordinance as a whole and particular provisions of the ordinance lack a rational relationship to the City's police powers.

¶ 48. In the following subsections we first explain the applicable legal standard and then apply this standard to MMAC's challenges to the ordinance.

A. *Legal Standard*

■

¶ 49. When a challenge to the exercise of police powers is directed at the legislative means employed,

the issue is properly framed as one of substantive due process. *See State v. Smet*, 2005 WI App 263, 11, 288 Wis. 2d 525, 709 N.W.2d 474. Substantive due process requires that the legislative means chosen have a rational relationship to the purpose or object of the enactment; if it has, and the object is a proper one, the exercise of the police power is valid. *See State v. Jackman*, 60 Wis. 2d 700, 705, 211 N.W.2d 480 (1973).

¶ 50. In this case there is no dispute that the City has the power to legislate for the purposes of the health, safety, and welfare of the public. *See* Wis. Stat. § 62.11(5). The issue therefore is whether "the ordinance is rationally related to the public health, safety, . . . or general welfare." *State ex rel. Grand Bazaar Liquors, Inc. v. City of Milwaukee*, 105 Wis. 2d 203, 211, 313 N.W.2d 805 (1982).[14] Stated in somewhat different words, "to be reasonable, an ordinance must tend in some degree to accomplish the object for which the municipal corporation was created and powers conferred upon it." *Id.* at 212 (citation omitted).

¶ 51. The circuit court's approach, and that advocated by MMAC, is inconsistent with these established principles of substantive due process analysis. The fundamental inquiry is *not* whether the challenged provisions in an ordinance are rationally related *to the stated purpose of the ordinance* but whether the challenged provisions are rationally related to *any legiti-*

[14] Because direct legislation cannot exceed the powers conferred upon the municipal governing body by state law, *Mount Horeb*, 263 Wis. 2d 544, ¶ 26, we apply the same standard here that applies to a police power challenge to ordinances or statutes that are enacted by a legislative body.

*mate municipal objective*—in this case, the health, safety, and welfare of the City's residents. *See Grand Bazaar Liquors*, 105 Wis. 2d at 211.

■

¶ 52. To be clear, the stated purposes of legislation—or, in this case, the "whereas" clauses and the findings they contain—are certainly relevant in determining whether the challenged provisions of the ordinance have a rational relationship to the City's police powers. However, they do not define the limits of our inquiry. *See id.* at 210 (a post hoc rationale for an ordinance is properly considered despite the testimony and evidence in the record because the focus is a reasonable person's perspective of the ordinance). Indeed, the legislation need not expressly state a rationale nor must it contain legislative findings to support the law; rather, the legislation survives the substantive due process challenge if the court can conceive of a rational basis for the legislation. *State v. Radke*, 2003 WI 7, ¶ 27, 259 Wis. 2d 13, 657 N.W.2d 66.

¶ 53. In support of its position, MMAC quotes from both *Grand Bazaar Liquors* and *Ferdon v. Wisconsin Patients Compensation Fund*, 2005 WI 125, 284 Wis. 2d 573, 701 N.W.2d 440. We conclude that neither case supports MMAC's position.

¶ 54. *Grand Bazaar Liquors* addresses an equal protection claim in addition to the claim that the ordinance was an arbitrary exercise of police power. In the context of discussing the ordinance's classifications, which relate to the equal protection claim, the court stated: "When faced with a challenge to a legislative classification under the rational-basis test, the court should ask, first, what the purposes of the statute are, and, second, whether the classification is rationally related to achievement of those purposes." *Grand Bazaar*

*Liquors*, 105 Wis. 2d at 209 (citation omitted).[15] However, as we have already noted, the *Grand Bazaar Liquors* court also stated that the proper standard "is an objective determination whether the ordinance is rationally related to the public health, safety, . . . or general welfare." *Id.* at 211. This is the standard directly applicable to a police power challenge.

¶ 55. From *Ferdon*, an equal protection case, MMAC cites the statement that judicial review under the rational basis standard requires a "thoughtful examination of not only the legislative purpose, but also the relationship between the legislation and the purpose." *Ferdon*, 284 Wis. 2d 573, ¶ 77. The court then identified the legislative objectives because that would "allow [the court] to determine whether the legislatively created classifications are rationally related to achieving appropriate legislative objectives." *Id.*, ¶ 85. *Ferdon* does not suggest that, when legislation is challenged on the basis that it exceeds police powers, our inquiry is limited to whether the challenged provisions are rationally related to the stated purpose of the ordinance.

¶ 56. A final—and significant—aspect of the applicable legal standard is that ordinances, like statutes, are presumed constitutional. *Grand Bazaar Liquors*, 105 Wis. 2d at 208. The challenger must demonstrate

---

[15] In a challenge to a legislative classification on equal protection grounds, the lowest level of scrutiny is the rational basis test, which has been expressed in various ways but essentially asks "whether there are any real differences to distinguish the favored class . . . from other classes . . . who are ignored by the statute . . . ." *Ferdon v. Wisconsin Patients Comp. Fund*, 2005 WI 125, ¶¶ 71–74, 284 Wis. 2d 573, 701 N.W.2d 440 (citation omitted).

"beyond a reasonable doubt that the ordinance possesses no rational basis to any legitimate municipal objective." *Id.* at 209.

### B. Application of Legal Standard to the Ordinance

¶ 57. MMAC contends that the entire ordinance is unconstitutional, and, even if it is not, several particular provisions are unconstitutional and these cannot be severed. In the following subsections we describe the ordinance and then address each challenge. We conclude MMAC does not prevail on any of these challenges because it has not shown beyond a reasonable doubt that the entire ordinance or the specific provisions challenged have no rational relationship to the health, safety, and welfare of the City.

### 1. Ordinance overview

¶ 58. The ordinance provides that paid sick leave shall be accrued at a minimum rate of one hour for every thirty hours worked up to at least seventy-two hours in a calendar year, except that in small businesses (fewer than ten employees) the required annual amount is forty hours.[16] MCO § 112–3.2, 3.3. After ninety days of employment, employees may begin to use their accrued sick leave and may thereafter use it as it accrues; it may be carried over to the next calendar year, but there are limits on how much can be used in one year. MCO § 112–3.5–3.8. The authorized uses of the paid sick leave fall into three categories:

 a. An employee's mental or physical illness, injury or health condition or need for medical diagnosis, care

---

[16] Government employers are excluded from the ordinance's requirements. MCO § 112–1.4.

or treatment of a mental or physical illness, injury or health condition or need for preventive medical care.

b. Care of a family member with a mental or physical illness, injury or health condition who needs medical diagnosis, care or treatment of a mental or physical illness, injury or health condition or who needs preventive medical care.

c. Absence necessary due to domestic abuse, sexual assault or stalking, provided the leave is for any of the following:

MCO § 112–5.1.a - c. The third category is broken down further:

c-1. Seek medical attention for the employee or employee's child, spouse, parent, grandparent or extended family member to recover from physical or psychological injury or disability caused by domestic or sexual violence.

c-2. Obtain services from a victim services organization.

c-3. Obtain psychological or other counseling.

c-4. Seek relocation due to the domestic or sexual violence or stalking.

c-5. Take legal action, including preparing for or participating in any civil or criminal legal proceeding related to or resulting from the domestic or sexual violence.

MCO § 112–5.1.c-1 to c-5.

¶ 59. The "whereas" clauses of the ordinance state there is an absence of paid sick leave or an inadequate amount among a large number of Milwaukee employees. These clauses also identify particular problems

496

that result: employees coming to work sick, which delays their recovery and exposes co-workers and customers to infectious diseases; employees coming to work when their children or other family members need care or medical attention; children going to school sick when their parents have to work; the difficulty of scheduling medical appointments for employees and their families during working hours; and the risk of losing employment if an employee stays home when they or family members are ill or injured, which causes economic instability for the family and increases the likelihood that taxpayer-funded sources will need to provide assistance.

¶ 60. The concluding "whereas" clause states: "To safeguard the public welfare, health, safety and prosperity of Milwaukee, it is essential that all persons working in our community be able to earn paid sick days that are adequate to ensure a decent and healthy life for them and their families. Ensuring the adequacy of paid sick days for employees in Milwaukee will ensure a more stable workforce in our community and thereby benefit not only workers and their families but employers and the community as a whole."

*2. Is the entire ordinance unconstitutional?*

¶ 61. MMAC contends the entire ordinance is unconstitutional because no fact-finding took place. According to MMAC, the "whereas" clauses, the hearing before the Judicial and Legislative Committee of the Milwaukee Common Council, and the literature distributed by 9to5 to the electorate prior to the election in support of the ordinance are not an adequate substitute for fact-finding. MMAC also challenges the reliability of some of 9to5's materials.

497

¶ 62. MMAC's first argument—on the lack of findings—is based in large part on the premise that the legislative body must make findings in order for the legislation to meet a substantive due process challenge. As we have already explained, this is not the law. *See Radke*, 259 Wis. 2d 13, ¶ 27 (specific legislative findings to support the challenged law are not necessary if the court can conceive of a rational basis).

¶ 63. In addition, MMAC's argument overlooks the direct legislation context of the ordinance. When the governing body chooses not to enact a proposed ordinance but to put it to a vote of the electorate, the governing body will not make findings in support of the ordinance. In this situation, the ordinance itself, materials submitted at a hearing held by the governing body, materials distributed to the electorate, and materials otherwise shedding light on the purpose of the ordinance and its relation to the municipality's police powers are all appropriate to consider in deciding if the ordinance enacted under WIS. STAT. § 9.20 has a rational relationship to the health, safety, and welfare of the people of Milwaukee. However, we emphasize that, even in the absence of such materials, the court is obligated to determine whether it can conceive of a rational relationship between a challenged direct legislation ordinance and the municipality's police powers. *Id.*

¶ 64. In order to address MMAC's second argument—on the unreliability of 9to5's materials—we briefly describe the materials. In support of the proposed ordinance, a number of fact sheets and an executive summary and report were released at press conferences, available on the campaign's website, and distributed to various organizations and officials. The executive summary and report of the Institute for Women's Policy Research, *Valuing Good Health in*

498

*Milwaukee: The Costs and Benefits of Paid Sick Days* by Vicky Lovell, Ph.D. (Lovell report), and the fact sheets provide an empirical basis for the findings in the "whereas" clauses.

¶ 65. Some of the Lovell report's key findings are: (1) 47% of the private sector workforce in Milwaukee lacks paid sick leave; (2) paid sick days reduce the spread of contagious diseases such as the flu; (3) workers will save $1 million annually in health-care expenditures just from lower flu contagion at work; (4) getting timely medical care will save money and speed recovery; (5) savings to employers will total $38 million annually, largely from reduced costs of turnover; (6) the net savings to employers from the ordinance will be $4.10 per worker per week. The Lovell report draws upon various state and national statistics, as well as other economic and health-related studies, applies them to Milwaukee employers, and presents an itemized breakdown of each of the findings and the data relied upon.

¶ 66. The fact sheets address particular health problems—asthma in children and domestic violence—and how the ordinance would contribute to the improved health of children with asthma and victims of domestic violence.

¶ 67. MMAC contends that some of the studies relied on in the Lovell report and fact sheets are not current enough or are based on insufficiently similar populations. However, MMAC points to no factual materials supporting the proposition that the methods used in the report and fact sheets are unreasonable. Indeed, MMAC does not point to any evidence that contradicts the rationality of the link between providing paid sick leave to employees and the health, safety, or welfare of the City of Milwaukee. But even if there

were studies or reports that contradict those supporting the ordinance, the court's role is limited to determining whether any of the information provides a reasonable basis for the ordinance; the fact that some information supports a competing conclusion does not render the ordinance an unconstitutional exercise of police powers. *Radke*, 259 Wis. 2d 13, ¶ 28 n.38 (Where there is some evidence supporting the rationale articulated by one sponsor of the legislation, contrary expert opinion does not mean the legislation lacks a rational basis. "The legislature's assumptions . . . may be erroneous, but they are arguably correct and that is sufficient on a rational basis review to protect the legislative choice from constitutional challenge."). *See also Safe Water Ass'n v. City of Fond du Lac*, 184 Wis. 2d 365, 375–76, 516 N.W.2d 13 (Ct. App. 1994).

¶ 68. MMAC also dismisses the testimony and submissions at the hearing before the City Council committee as "pleas from issue advocacy groups and a few testimonials." Most of the participants supported passage of the ordinance and explained the need for it from a variety of experiences. Their evident interest in having the ordinance pass does not make the information they provided irrelevant or unreliable in assessing whether the ordinance has a rational basis. It is to be expected that, for legislation such as this, there will be competing interests. Moreover, legislators routinely consider anecdotal information from citizens, and we perceive no reason why such information is problematic in a direct legislation context.

¶ 69. We recognize that some employers, both in that hearing and in affidavits presented by MMAC in the circuit court, oppose the ordinance because of the cost to them. As noted above, the Lovell report took into account not only the additional expense to employers of

paid sick leave under the ordinance but the financial savings to employers as well and, in addition, the financial savings to employees. MMAC has not pointed to any factual materials that dispute the report on these points, let alone show that it is unreasonable to conclude that providing paid sick leave as required by the ordinance will be an overall financial benefit to the City.

*3. Are the relocation and legal action provisions rationally related to a police power?*

¶ 70. The proper inquiry in resolving MMAC's challenge to the relocation and legal action provisions is whether allowing employees to use paid sick leave for these purposes when they or their family members are victims of domestic abuse, sexual assault, or stalking is rationally related to the health, safety, and welfare of the people of the City.[17] For the following reasons, we conclude it is.

¶ 71. First, as we have already explained, our inquiry is not limited to the purposes stated in the "whereas" clauses. Thus, we reject MMAC's argument that the absence of a specific clause or finding directed to these two provisions indicates they lack a rational relationship to the City's police powers.

¶ 72. Second, even without resort to specific evidence, it is a reasonable assumption that a person who has been a victim of domestic abuse, sexual assault, or stalking will have better physical and mental health in the future if the abuse, assault, or stalking does not occur again. Thus, it is reasonable to conclude that

_____

[17] MMAC does not make a specific challenge to the provisions in MCO § 112–5.1.c-1 to c-3 that allow sick leave for other purposes necessitated by domestic abuse, sexual assault, or stalking.

measures aimed at preventing a recurrence will benefit the health of the victim and keep the victim safe. Moving to another residence and legal action such as restraining orders and criminal proceedings are obvious preventive measures.

¶ 73. Third, both the Lovell report and the domestic violence fact sheet, also authored by Dr. Lovell, provide support for these conclusions. These documents specify the types of services victims of domestic abuse and sexual assault may need in addition to medical care to protect their health and safety, including finding shelter and participating in the judicial process.

¶ 74. Fourth, the 1992 report by the American Medical Association, *Diagnostic and Treatment Guidelines on Domestic Violence* (AMA Guidelines), includes, as part of recommended treatment, referrals for services to relocate and for legal advocacy to obtain protection from ongoing or future harm.[18]

¶ 75. Fifth, we reject MMAC's argument that the Lovell report and fact sheet and the AMA Guidelines

---

[18] 9to5 has submitted the AMA Guidelines on appeal. MMAC objects to this document on the ground that it was not made available to the electorate and was not submitted in the circuit court. However, as we have already explained, the court's inquiry is not limited to what was actually considered by the electorate, and the court is to determine if there is any conceivable rational basis for the ordinance. *See State v. Radke*, 2003 WI 7, ¶ 27, 259 Wis. 2d 13, 657 N.W.2d 66. Because our review is de novo, we may consider this document in our inquiry if it is an appropriate subject for judicial notice. *See* Wis. Stat. § 902.01; *see also Sisson v. Hansen Storage Co.*, 2008 WI App 111, ¶ 11, 313 Wis. 2d 411, 756 N.W.2d 667 (an appellate court may take judicial notice when appropriate). In the absence of an objection by MMAC that this submission by 9to5 is not an accurate statement of the AMA Guidelines, we conclude it is appropriate to take judicial notice of them.

are irrelevant because all that matters is what the "average Milwaukee elector" would think is encompassed by the term "sick leave." This is not the standard for determining whether the ordinance violates substantive due process.

¶ 76. Sixth, we reject MMAC's argument that the absence of specific evidence that sick leave is necessary means there is no rational basis.[19] The domestic violence fact sheet states that the services that victims of domestic violence and sexual assault need may be available only during their working hours. While this statement is unsupported by data, common sense tells us that legal proceedings generally take place during the day on week days and that relocation on an expedited basis may not be able to be accomplished in off-work hours.

¶ 77. In summary, we conclude there is a rational relationship between the legal action and relocation provisions of the ordinance and the health and safety of employees and family members who are victims of domestic abuse, sexual assault, or stalking. In addition, the support provided in the Lovell report for a connection between paid time off for health-related reasons, on the one hand, and worker productivity and economic stability, on the other, reasonably applies to these uses of sick leave as well as the other uses. Thus, the relocation and legal action provisions are rationally related to the police powers of the health, safety, and welfare of the people of the City.

---

[19] MMAC also contends that there is no evidence that *paid* sick leave is necessary for the relocation and legal action purposes, an argument it makes for all the permitted uses of sick leave. We address this in the next subsection.

*4. Are the requirements of paid sick leave of a minimum of seventy-two or forty hours annually rationally related to the health, safety, or welfare of the City?*

¶ 78. MMAC challenges the requirement of *paid* sick leave, as opposed to unpaid leave, and the requirement of a seventy-two or forty-hour annual minimum, depending on the size of the business.[20] MMAC's arguments on both these points are based on the premise that an ordinance is unreasonable if the objective could be achieved by less burdensome means. This is not the correct standard. "An ordinance is not invalid as unreasonable merely because substantially the same result might be accomplished by the enactment of a different type of ordinance, or because a less burdensome course might have been adopted to accomplish the end." *Grand Bazaar Liquors*, 105 Wis. 2d at 211–12 (citation omitted). The correct standard is whether the legislative means chosen has a rational relationship to the permissible object. *Id.* at 209. Applying this standard, we conclude these two provisions are rationally related to the health, safety, and welfare of the people of the City. With respect to paid versus unpaid sick leave, it is reasonable to conclude that paid sick leave will induce more employees to take time off work when necessary for their health and the health of their families. The choice of paid sick leave is not unreasonable simply because unpaid sick leave might achieve many of the ordinance's goals.

---

[20] MMAC also asserts that the distinction between large and small businesses and the adoption of ten employees as the cutoff are not supported by any findings, even if we consider the "whereas" clauses. This argument is insufficiently developed and we do not address it.

¶ 79. With respect to the required hours of leave, MMAC argues that, because the Lovell report found that the average annual use of sick leave by all United States employees (including those without paid sick leave) is 2.7 days per year, there is no rational basis for requiring seventy-two (or forty) hours annually. We conclude that it is reasonable to establish a higher minimum, given that the 2.7–day figure is an average, that it includes *unpaid* sick leave, and that it is for purposes that are more limited than those allowed in the ordinance. The Lovell report, the fact sheets, and the testimony support the proposition that employees in Milwaukee do not have an adequate amount of sick leave available to meet their health needs and the needs of their families. The Lovell report estimates that many employees will not need to use all the sick leave allowed under the ordinance, but some will—in particular, for maternity leave and for purposes related to domestic violence. We stress again that whether a minimum lower than seventy-two or forty hours would have been reasonable is not the question before us under the controlling standard of law. *See Grand Bazaar Liquors*, 105 Wis. 2d at 211–12. The question is whether these minimums are unreasonable. Applying the correct legal standard, we cannot conclude that the seventy-two and forty-hour minimums are unreasonable.

III. State Law Preemption

¶ 80. MMAC contends that the ordinance is preempted by three state statutes: the Minimum Wage Law, Wis. Stat. ch. 104; the Family/Medical Leave Act, § 103.10; and the Worker's Compensation Act, ch. 102.[21]

---

[21] The ordinance contains a preemption clause that states: "Nothing in this chapter shall be interpreted or applied so as to

In the following subsections we set forth the law on preemption and then apply it to each of the three statutes. Like the circuit court, we conclude that the ordinance is not preempted by any of these statutes.

*A. Applicable Law*

██ █

¶ 81. Cities and villages have the right to "determine their local affairs and government, subject only to [the state] constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village." Wis. Const. art. XI, § 3(1). Pursuant to Wis. Stat. §§ 62.04 and 62.11(5), the legislature has given cities all powers not denied them by other statutes or the constitution. *See Wisconsin's Envtl. Decade, Inc. v. DNR*, 85 Wis. 2d 518, 531–33, 271 N.W.2d 69 (1978). While cities may address matters of local affairs that are also matters of statewide concern, *id.* at 533, this ability is limited. *DeRosso Landfill Co. v. City of Oak Creek*, 200 Wis. 2d 642, 651, 547 N.W.2d 770 (1996). If the State legislates on a matter of statewide concern, that legislation preempts a local ordinance in the following situations:

> (1) the legislature has expressly withdrawn the power of municipalities to act; (2) [the ordinance] logically conflicts with state legislation; (3) [the ordinance] defeats the purpose of state legislation; or (4) [the ordinance] violates the spirit of state legislation.

*Id.* at 651–52 (footnotes omitted).

---

create any power or duty in conflict with federal or state law." MCO § 112–19. MMAC's position is that, notwithstanding this provision, the ordinance is preempted by the state statutes we discuss in this section and the federal statutes we discuss in the next section.

¶ 82. The Minimum Wage Law expressly states that "providing a living wage" is a matter of statewide concern. Wis. Stat. § 104.001(1). Although the Family/Medical Leave Act and the Worker's Compensation Act do not contain similar provisions, neither party argues they are not legislation on matters of statewide concern. We accept this implicit agreement that these two statutes do legislate on matters of statewide concern. Thus, these three statutes preempt local ordinances in the four situations listed in the preceding paragraph.

*B. Minimum Wage Law*

■

¶ 83. Wisconsin's Minimum Wage Law provides that "[a] city, village, town, or county may not enact and administer an ordinance establishing a living wage." Wis. Stat. § 104.001(2). The Department of Workforce Development (DWD) is charged with "determining the living wage, and . . . carry[ing] out the purposes of" chapter 104 by establishing minimum wage rates. §§ 104.04, 104.01. MMAC contends that the mandated paid leave in the ordinance impermissibly requires employers to pay a higher living wage than that established by DWD. We do not agree. The minimum wage affected by the statute is defined as the hourly rate and does not consider benefits except tips, meals, and lodging. Wis. Admin. Code §§ DWD 272.001, 272.03(1)-(4), 272.04. Therefore, requiring paid sick leave does not increase the hourly wage rate as DWD has defined it.

*C. Family/Medical Leave Act*

■ ■

¶ 84. MMAC contends that the Family/Medical Leave Act preempts the ordinance because it logically

507

conflicts with this statute. An ordinance logically conflicts with state legislation if it "attempt[s] to authorize ... what the legislature has forbidden, ... [or] forbid[s] what the legislature has expressly licensed, authorized, or required." *City of Madison v. Schultz*, 98 Wis. 2d 188, 201, 295 N.W.2d 798 (Ct. App. 1980) (quoting *Fox v. City of Racine*, 225 Wis. 542, 546–47, 275 N.W. 513 (1937)). The ordinance and the statute do not logically conflict because the text of the statute allows for its coexistence with other forms of leave. *See* WIS. STAT. § 103.10(2)(a) ("Nothing in this section prohibits an employer from providing employees with rights to family leave or medical leave which are more generous to the employee than the rights provided under this section."); § 103.10(5)(b) ("An employee may substitute, for portions of family leave or medical leave, paid or unpaid leave of any other type provided by the employer.").

██

¶ 85. MMAC also contends that the statute preempts the ordinance because the ordinance defeats the legislative purpose to make DWD the only governmental agency with regulatory authority over labor issues. However, this is not a purpose of the statute. To the contrary, WIS. STAT. ch. 103 allows municipalities to enact "[l]ocal orders," including ordinances, as long as these orders are not "unreasonable and in conflict with the order of the [DWD]." §§ 103.001(10), 103.005(7)(b).

### D. Worker's Compensation Act

██

¶ 86. MMAC contends the Worker's Compensation Act preempts the ordinance because the statute establishes the "exclusive remedy against the employer"

for missed work due to work-related injuries, WIS. STAT. § 102.03(2), while the ordinance requires employers to provide paid sick leave without including an exclusion for work-related injuries or illness. We are not persuaded. The worker's compensation statutes expressly allow and provide for such potentially overlapping benefits. *See* WIS. STAT. § 102.30(2) ("An employer may provide . . . sick, accident or death benefits in addition to the compensation provided under this chapter."); *see also* § 102.30(3) ("Unless an employee elects to receive sick leave benefits in lieu of compensation under this chapter, if sick leave benefits are paid during the period that temporary disability benefits are payable, the employer shall restore sick leave benefits to the employee in an amount equal in value to the amount payable under this chapter.").

IV. Federal Law Preemption

¶ 87. MMAC contends the ordinance is preempted by two federal statutes: the NLRA and the LMRA.[22] Federal preemption of state laws occurs in the following three circumstances: (1) Congress explicitly states its intention to preempt state law; (2) the statutory or regulatory scheme shows an intent to occupy the field to the exclusion of state law; (3) the state law and the federal law actually conflict in that it is impossible for a private party to comply with both state and federal requirements. *English v. General Elec. Co.*, 496 U.S. 72,

---

[22] Article VI of the United States Constitution provides that the laws of the United States "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

78–79 (1990). Neither the NLRA nor the LMRA contains an express preemption provision. We understand MMAC to be relying on the second circumstance—that the statutory scheme shows Congress's intent to preempt state law. We agree with the circuit court that the ordinance is preempted by neither federal statute.

### A. National Labor Relations Act (NLRA)

¶ 88. The U.S. Supreme Court has articulated two distinct NLRA preemption principles: the *Garmon*[23] doctrine and the *Machinists*[24] doctrine. *Belknap, Inc. v. Hale*, 463 U.S. 491, 498 (1983). MMAC contends that the ordinance is preempted under both doctrines, but we conclude that neither applies.

 

¶ 89. The *Garmon* doctrine forbids state regulation of activities protected under § 7 of the NLRA (generally, the right of employees to self organize and to collectively bargain) and activities prohibited under § 8 (generally, activities that interfere with the rights granted under § 7).[25] *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244 (1959). However, the *Garmon* preemption doctrine does not apply when the activity regulated is of peripheral concern to federal labor law or "deeply rooted in local feeling and responsibility." *Id.* at 243–44; *Belknap*, 463 U.S. at 498.

¶ 90. The ordinance here does not regulate the activities protected by § 7 or prohibited by § 8 of the

[23] *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959).

[24] *Machinists v. Wisconsin Emp't Relations Comm'n*, 427 U.S. 132 (1976)

[25] 29 U.S.C. §§ 157 and 158.

NLRA. *See Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 748–49 (1985) (Massachusetts statute requiring certain minimum health care benefits to be provided under insurance plans does not regulate any activity protected or prohibited by the NLRA because the NLRA is silent on the substantive provisions of welfare-benefit plans.). In addition, the ordinance's purpose of improving health and safety through paid leave comes within the traditional subjects of state regulation. *See Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485 (1996) (in the context of a preemption analysis under another federal statute, recognizing the "historic primacy of state regulation of matters of health and safety").

¶ 91. The *Machinists* doctrine "protects against state interference with policies implicated by the structure of the [NLRA] itself, by preempting state law and state causes of action concerning conduct that Congress intended to be unregulated." *Metropolitan Life,* 471 U.S. at 749. This doctrine does not preempt laws that establish minimum labor standards because such standards do not encourage or discourage the collective bargaining process but, rather, are minimum standards that "devolve on [employees] as individual workers" independent of the bargaining process and thus they do not "even inadvertently affect [the] interests implicated in the NLRA." *Id.* at 755. *See also Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 20–21 (1987). Minimum labor standards in this context are those that affect union and nonunion employees equally. *Metropolitan Life,* 471 U.S. at 755. According to both 9to5 and MMAC, an additional aspect of minimum labor standards in this context is that they are laws of general application as opposed to ones affecting particular industries. *See 520 S. Michigan Ave. Assocs. v. Shannon,* 549 F.3d 1119, 1130 (7th Cir. 2008).

¶ 92. The ordinance here establishes minimum labor standards within the meaning of the above cases. It provides an employment benefit to all non-government employees, both union and non-union, in all industries in the City.

## B. Labor Management Relations Act (LMRA)

██ ██

¶ 93. MMAC contends that the ordinance is pre-empted by § 301 of the LMRA because the ordinance necessarily requires the Milwaukee Equal Rights Commission to interpret collective bargaining agreements in order to determine whether employers have satisfied the ordinance. However, this argument is based on a misunderstanding of § 301. Section 301 preemption does not invalidate a state law but instead preempts the application of a state law in the context of a particular case.

██

¶ 94. Section 301 applies to "[s]uits by and against labor organizations" and preempts "an *application* of state law . . . only if such *application* requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988) (emphasis added). Section 301 does not "preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 212 (1985). Where a state law claim depends upon both the interpretation of a collective bargaining agreement and a separate state law analysis, federal law governs the interpretation of the agreement but the separate state law analysis is not thereby preempted. *Lingle* at 413 n.12.

¶ 95. Because the ordinance establishes rights and obligations independent of labor contracts, the ordinance is not preempted by § 301. If a particular claim under the ordinance at some point requires an interpretation of the sick leave provisions in a collective bargaining agreement, § 301 would preempt state law and require the application of federal law only on the interpretation of the collective bargaining agreement. The ordinance would otherwise govern the resolution of the claim.

V. Impairment of Contracts

¶ 96. MMAC contends the ordinance violates the Contract Clauses of the Wisconsin Constitution and the United States Constitution because the ordinance impairs the collective bargaining agreements that some of its members have.[26] We agree with the circuit court that the ordinance does not violate either the Wisconsin or the federal Contract Clause.

¶ 97. Neither the Wisconsin nor the federal Contract Clause is an absolute prohibition on impairment of contracts. *Allied Structural Steel Co. v. Spannaus,* 438

---

[26] Article I, section 12 of the Wisconsin Constitution states: "[n]o bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed[.]" Article I, Section 10 of the United States Constitution states, in relevant part: "No state shall . . . pass any Bill of Attainder, ex post facto Law, or law impairing the Obligation of Contracts[.]" Although the interpretation of the contract clause of the Wisconsin Constitution does not necessarily parallel federal interpretations of the Contract Clause of the United States Constitution, our supreme court's decisions have relied upon the decisions of the United States Supreme Court in interpreting the Wisconsin contract clause. *Dairyland Greyhound Park, Inc. v. Doyle,* 2006 WI 107, ¶ 51, 295 Wis. 2d 1, 719 N.W.2d 408.

U.S. 234, 241 (1978); *Chappy v. LIRC*, 136 Wis. 2d 172, 186, 401 N.W.2d 568 (1987). These clauses do not prevent state or municipal governments from exercising their police powers simply because contracts previously entered into between private parties are affected; rather, these clauses impose some limits on the legitimate exercise of that power in certain situations. *Allied Structural Steel*, 438 U.S. at 241–42; *Chappy*, 136 Wis. 2d at 186–87.

¶ 98. In order to determine if a law violates either constitutional Contract Clause, we employ a three-part test, inquiring (1) whether the change in law substantially impairs the operation of a preexisting contract; (2) if it does, whether the legislation has a significant and legitimate public purpose; and (3) if it does, whether the legislation's impairment is reasonable and necessary to achieve that purpose. *Dairyland Greyhound Park, Inc. v. Doyle*, 2006 WI 107, ¶¶ 55–57, 295 Wis. 2d 1, 719 N.W.2d 408; *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411–12 (1983). A law that substantially impairs an existing contractual obligation does not unconstitutionally impair contracts "as long as the impairment is justified under a significant and legitimate public purpose, and the [law] is reasonable and appropriate to advance that purpose." *Dairyland Greyhound*, 295 Wis. 2d 1, ¶ 72 (citations omitted). MMAC, as the challenger to the ordinance, has the burden of proving beyond a reasonable doubt that the ordinance is an unconstitutional impairment of contract. *Wisconsin Prof'l Police Ass'n v. Lightbourn*, 2001 WI 59, ¶ 144, 243 Wis. 2d 512, 627 N.W.2d 807.

¶ 99. MMAC argues that the first part of the test is met because certain members are bound by one or more collective bargaining agreements (approximately

twenty agreements in total) that do not satisfy the ordinance's requirements of making available paid sick leave in the specified amounts. According to MMAC, the costs of providing the "additional, unbargained for compensation" is "significant (hundreds of thousands of dollars)."[27]

¶ 100. We have some questions on MMAC's factual assumptions in assessing the degree of impairment. For example, MMAC appears to overlook the fact that the collective bargaining agreements are for fixed terms of two to seven years. Only for these terms are the agreements "preexisting" for purposes of Contract Clause analysis. Many of these terms have already expired and the latest will expire in 2013. This is a significant factor in addressing the degree of impairment of each contract.[28] However, even if we assume the degree of impairment of the collective bargaining

---

[27] Although MMAC does not expressly so state, it appears to presume that the ordinance would be invalid as to all employers if the ordinance violated the Contract Clauses as to any employer with a preexisting collective bargaining agreement. MMAC provides no authority on this position, and it appears inconsistent with the way in which the Court in *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 236 (1978), frames the issue: "[W]hether the application of [the Minnesota statute] *to the appellant* violates the Contract Clause of the United States Constitution." (Emphasis added.) However, because we conclude MMAC has not established that the ordinance unconstitutionally impairs any of the collective bargaining agreements, we need not resolve this issue.

[28] In addition, the estimates of the costs these employers could incur appear to assume that each employee would use each year all the sick leave mandated by the ordinance. Also, it is not apparent that all estimates take into account the fact that the ordinance allows employers who already have a paid leave policy to credit that against the ordinance's requirements, if

agreements meets the first part of the test, we are satisfied that MMAC does not prevail when we consider the second and third parts.

¶ 101. With respect to the second part—whether the legislation has a significant and legitimate public purpose—MMAC refers us to its argument that the ordinance lacks a rational basis. We have already rejected this argument in the context of MMAC's police powers/substantive due process challenge. Applying the same reasoning here, we conclude the ordinance has a significant and legitimate public purpose.

¶ 102. With respect to the third part of the test— whether the impairment is reasonable and necessary to achieve its purpose—MMAC argues that the requirements of the ordinance are greater than necessary to achieve its purpose. We reject this argument because MMAC incorrectly relies on cases applying the greater level of scrutiny appropriate when a state impairs its own contracts.[29]

■

¶ 103. The established law is that "where the state is not a contracting party, the court should defer to the legislature's judgment as to the necessity and reasonableness of a particular measure." *Chappy*, 136 Wis. 2d at 190 (citing *Energy Reserves*, 459 U.S. at 412–13). We do not give the legislature this same deference when the challenged legislation involves the state's own contract

---

sick leave under their policy can be used for the purposes defined in the ordinance.

[29] MMAC cites to *United States Trust Co. of New York v. New Jersey*, 431 U.S. 1 (1977) (repeal of legislation in which state had agreed to certain protections for holders of bonds issued by a state agency), and *University of Hawai'i Professional Assembly v. Cayetano*, 183 F.3d 1096, 1107 (9th Cir. 1999) (legislation allowing the state to postpone certain dates on which state employees were to be paid).

because we factor in the state's self-interest in acting as it did. *Prof'l. Police Ass'n*, 243 Wis. 2d 512, ¶ 149.

¶ 104. In this case, the contracts MMAC asserts are impaired are between private parties. MMAC asserts that nonetheless we should not defer to the judgments made in the ordinance on what is necessary and reasonable. The reason, according to MMAC, is that the electors' "self-interest is at stake," just as the State's self-interest is at stake when it is a party to a contract that the State's legislation impairs. However, MMAC provides no authority and no developed arguments to support this contention. We therefore conclude the ordinance here is entitled to the same deference accorded to legislation in impairment of contract cases where the State is not a party to the contract. MMAC does not argue that, if we employ this deference, the impairment of contracts is not reasonable and necessary to achieve the ordinance's purpose. Accordingly, we end the third inquiry by concluding that the ordinance is reasonable and necessary to meet its purpose.

¶ 105. In summary, we conclude that, even if the ordinance's impairment of the collective bargaining agreements is substantial, the ordinance has a significant and legitimate public purpose and the ordinance is reasonable and necessary to meet that purpose. Therefore, the ordinance does not unconstitutionally impair the collective bargaining agreements.

VI. Territorial Reach of Ordinance

■■■

¶ 106. MMAC contends that the ordinance regulates extra-territorial activities in violation of the principle that cities may not regulate activities that occur outside of their boundaries. *See Safe Way Motor Coach*

517

*Co. v. City of Two Rivers*, 256 Wis. 35, 43, 39 N.W.2d 847 (1949).[30] MMAC reads the ordinance to require employers located outside the City with individual employees who work both within and outside the City to pay those employees their full wages for days on which they were out sick but not scheduled to work in the City. We agree with the circuit court that MMAC's interpretation of the ordinance is not correct.

¶ 107. It is true, as MMAC points out, that the definition of "employer" in the ordinance does not contain any geographic limitations. *See* MCO § 112–1.4. However, we do not interpret statutes by focusing on terms in isolation. *Kalal*, 271 Wis. 2d 633, ¶ 46. The definition of "employe" does contain a geographical limitation and it expressly refers to "employer:" An "employe" is "any person who is employed within the geographic boundaries of the city by an employer . . . ." MCO § 112–1.3.

¶ 108. When these two definitions are read together, it is clear that a person is an "employe" for purposes of the ordinance only when that person is "employed within the geographic boundaries of the city." The official notice published November 12, 2008, supports this plain reading. This notice states that the ordinance's purpose is to "safeguard the public welfare, health, safety and prosperity of Milwaukee," and that the ordinance intends to meet this purpose by "requir[ing] that employers benefiting from the opportunity to do business [in Milwaukee] make available to their employ-

---

[30] There are certain extraterritorial powers granted municipalities, but these are not relevant here. *See* Wis. Stat. § 66.0105.

ees a reasonable number of paid sick days."[31] Therefore, the ordinance does not require employers, whether located in or outside the City, to pay employees their full wages for days on which the employees are out sick but are not scheduled to work in the City.

VII. Two-Year Period under WIS. STAT. § 9.20(8)

¶ 109. Because we have rejected MMAC's statutory and constitutional challenges to the ordinance, we must address the parties' dispute over the proper construction of WIS. STAT. § 9.20(8), which affects the repeal and amendment of the ordinance. Section 9.20(8) provides:

> City ordinances or resolutions adopted under this section shall not be subject to the veto power of the mayor and city or village ordinances or resolutions adopted under this section shall not be repealed or amended within 2 years of adoption except by a vote of the electors. The common council or village board may submit a proposition to repeal or amend the ordinance or resolution at any election.

¶ 110. 9to5 contends that, in the event the permanent injunction against the ordinance is vacated, the parties should be placed in the position they were in before the temporary injunction was issued on February 6, 2009. 9to5 asserts that it is unreasonable and unfair to conclude the two-year statutory period con-

---

[31] Although we do not look at legislative history to create an ambiguity in legislation that is plain on its face, we may consult legislative history to confirm the plain meaning of the statutory language. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 51, 271 Wis. 2d 633, 681 N.W.2d 110.

tinues to run while the ordinance is enjoined. MMAC responds that the language plainly provides that the two years began to run from the adoption of the ordinance on November 4, 2008, regardless of the injunction that has been in effect. We conclude that MMAC's construction of the statute is unreasonable.

¶ 111. The evident purpose of WIS. STAT. § 9.20(8) is to ensure that, when the electors have passed an ordinance by direct legislation, there is at least a two-year period during which that ordinance is the governing law unless the electors vote otherwise. At a minimum, this provision prevents the governing body—the body that declined to enact the legislation in the first instance —from nullifying the electors' choice by immediately repealing or amending the legislation. The question here is whether a court-imposed injunction can achieve the same nullifying effect.

¶ 112. WISCONSIN STAT. § 9.20(8) does not expressly address what occurs in the situation we have here: the ordinance was never implemented because of an injunction against it and the two years will have passed before the injunction is vacated. MMAC's construction allows opponents of successful direct legislation—those who lost in the election—to keep the legislation from ever being implemented. This undermines not only the evident purpose of § 9.20(8) but also the purpose of § 9.20 as a whole. Section 9.20 " 'implements the legislative powers that have been reserved to the people' by their elected representatives in the legislature. As such, the statute cannot be interpreted so as to unduly restrict those . . . powers, which 'are exercised with particular appropriateness under circumstances where the people are of the opinion that their elected representatives are not acting in response to the public will.' " *Mount Horeb*, 263

Wis. 2d 544, ¶ 16 (quoting *State ex rel. Althouse v. City of Madison*, 79 Wis. 2d 97, 118–19, 255 N.W.2d 499 (1977)).

¶ 113. In the circumstances of this case, returning the parties to the position they were in as of the date on which the temporary injunction was issued fulfills the purpose of Wis. Stat. §§ 9.20(8) and 9.20 and is the only reasonable construction of § 9.20(8). Thus, the two-year time period guaranteed by § 9.20(8) excludes the time between February 6, 2009, and the date on which the permanent injunction is vacated in the circuit court.[32]

## CONCLUSION

¶ 114. We conclude, based on the undisputed facts, that the ordinance does not violate the statutory or constitutional provisions advanced by MMAC. Accordingly we reverse the summary judgment granted in MMAC's favor. We remand with directions to grant summary judgment in favor of 9to5 and to vacate the permanent injunction.

*By the Court.*—Order reversed and cause remanded with directions.

[32] The Official Notice publishing the ordinance on November 12, 2008, states in part 3: "This ordinance shall be effective upon publication as provided in s. 9.20(7), Wis. Stats. Implementation of all provisions of this ordinance shall be accomplished no later than 90 days following publication." Neither party addresses this provision. In particular, neither party addresses how this provision should be applied in the circumstances that will exist when the injunction is vacated and, for purposes of Wis. Stat. § 9.20(8), the parties are returned to the positions they were in on the date the temporary injunction was issued.